BAZEMORE *et al.* v. SAVANNAH HOSPITAL *et al.*

No. 7490. October 1, 1930.

*Frederick A. Tuten,* for plaintiffs.

*George H. Richter* and *Anderson, Cann & Cann,* for defendants.

PER CURIAM.   In *Pavesich* v. *New England Life Ins. Co.,* 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann.

Cas. 561), this court ruled as follows: "The publication of a picture of a person, without his consent, as a part of an advertisement, for the purpose of exploiting the publisher's business, is a violation of the right of privacy of the person whose picture is reproduced, and entitles him to recover without proof of special damage." In that case the plaintiff sought damages for the unauthorized publication of his own picture. In this case the plaintiffs seek damages for the unauthorized publication of the picture of their deceased infant child. The distinction between the two cases is in the particulars pointed out, but in both cases the petitions alleged damages and injury to the plaintiffs. The petition in the present case, among other allegations, contains the following: "The photographing of and making the picture of said child and publishing same was much to the chagrin, mortification, humiliation, insult and injury of plaintiffs, and the acts and conducts of defendants are a serious injury to plaintiffs and an insult inflicted upon them, which money can not repair and which time can not eradicate, and same was done wantonly, maliciously, recklessly, negligently, and without regard of the rights of petitioners. Your petitioners show, that, in consequence of the conduct of defendants in the publication and circulation of said pictures, the making and selling and exposing of same, their good name has been attacked; that they have been greatly shocked, humiliated, and made sick, and have been obliged to employ a physician for their treatment and incurred a physician's and medical bill, the exact sum or sums they are unable to state at this time, but to the best of their knowledge and belief will be approximately two hundred fifty dollars." The suit is not based on injury to the deceased child. According to the allegations, the wrongs done by the defendants were committed after the death of the child. Therefore in this case there is no question of the survival of a right of action. The right, if it ever existed or now exists, began after the death of the child, and is a right of action on the part of the plaintiffs.

In *Chapman* v. *Western Union Telegraph Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183), it was held: "A person to whom a telegraphic message was addressed and sent, informing him of the desperate illness of his brother and requesting him to come, is not entitled to recover of the telegraph company damages on account of mental pain and suffering, alleged to have

resulted to the plaintiff from failure of the company to deliver him the message in due time, and from delaying delivery till too late to take the last train available for reaching the brother before his death occurred." But it was distinctly pointed out in the opinion that the petition alleged no damages to the plaintiff except for mental pain and suffering. Therefore that case differs from the present. That case was considered by this court in arriving at a decision in the *Pavesich* case, where this court said: "The effect of that decision is simply that in an action upon a contract, damages for mental pain and suffering can not be recovered, when no other damages have been sustained. Mr. Justice Lumpkin, in his opinion, distinctly recognizes that where there has been an invasion of a right from which the law would presume damages to flow, additional damages for pain and suffering might be recovered." Again, the court said: "It is well settled that if any contract, or property right, or trust relation has been violated, damages are recoverable. There are many cases which sustain such a doctrine." In *Jacobus* v. *Congregation of the Children of Israel,* 107 *Ga.* 518 (33 S. E. 853, 73 Am. St. R. 141), plaintiffs brought suit for damages, alleging that defendants had wrongfully disinterred a dead body of a near relative, and that the same had been done wantonly and maliciously. This court held that in such a suit "exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiffs may be taken into consideration." That case also was considered by the court in deciding the *Pavesich* case, and in the opinion Mr. Justice Cobb said: "We call attention to the ruling . . that damages may be recovered by the relative of a deceased person who is the owner of an easement of burial in a cemetery lot, for the disinterment of the dead body; and that if the injury has been wanton and malicious, or the result of gross negligence and a reckless disregard of the rights of others, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiff may be taken into consideration. If damages for wounded feelings can be recovered in such a case for the wanton removal of the bleaching bones of the deceased relative, it would seem for a stronger reason that such damages ought to be allowed to be recovered when those matters which the deceased had jealously guarded from the public during his lifetime, and his portrait, which

was likewise protected from the public gaze, are made public property after his death." It is insisted, however, by defendants in this case that in the *Pavesich* case it was said: "In Murray *v.* Lithographic Co., 28 N. Y. Supp. 271 [8 Misc. 36], a case decided by the court of common pleas of New York City and County, it was held that a person can not sue to enjoin the publication of a portrait of his infant child, or for damages caused thereby. This decision was undoubtedly correct; for if there was any right to sue for a violation of the right of privacy, the cause of action was in the child, and not in the parent." In other words, defendants insist that in the *Pavesich* case this court adopted the view of the New York court that a person can not sue to enjoin the publication of a portrait of his infant child or for damages caused thereby, because the right of action is in the child and not in the parent. This court could not have made a binding ruling to that effect, because no such question was involved in the *Pavesich* case. The remark of Mr. Justice Cobb in the opinion was entirely aside from the issue involved, and was clearly obiter dictum, because in the *Pavesich* case the plaintiff was not undertaking to recover for the unauthorized publication of a picture of some one else, but was seeking to recover for the unauthorized publication of his own picture. But there is a wide difference between the Murray case, decided by the New York court, and the present case. In the Murray case the parent sought to recover damages for the unauthorized publication of the portrait of his living infant child, and the court held that the right of action was in the living child. In this case the child was dead when the unauthorized acts were committed, and the right of action could not be in the child, but in the parents. Of course the decisions of courts of another State are not controlling upon this court, but are merely persuasive authority; and moreover the Murray case was not decided by the court of last resort of the State of New York. The petition in this case by the parents of a deceased child for general and special damages to the plaintiffs, and for injunction because of the alleged tortious act, set forth a cause of action. Compare Brents *v.* Morgan, 221 Ky. 765 (299 S. W. 967, 55 A. L. R. 964). A petition will not be dismissed as a whole, if it sets out a cause of action for any of the relief prayed. It follows that the court erred in sustaining the general demurrer and dismissing the case. The court expressly

did not pass on the special demurrer, and therefore no ruling is made thereon. With reference to the liability of Savannah Hospital see *Morton* v. *Savannah Hospital,* 148 *Ga.* 438 (96 S. E. 887).

*Judgment reversed. All the Justices concur except Beck, P. J., and Hill, J., who dissent.*

RUSSELL, C. J., and HINES, J., concur in the judgment, but are of the opinion that the petition would set out a cause of action if the child had not died.

HILL, J., dissenting. In an action to recover damages and for injunction, etc., for a violation of the right of privacy, a father and mother suing jointly can not recover from a hospital, a photographer, and a newspaper, sued jointly, for making, selling, and publishing photographs of their infant malformed child, a day or two old, who was placed in the hospital for treatment. The child, if living, would have a right to sue and recover for a violation of the right of privacy, but the cause of action would not be in its parents. *Pavesich* v. *New England Life Ins. Co.,* 122 *Ga.* 190, 209 (supra) ; Murray *v.* Lith. Co., 28 N. Y. Supp. 271 (supra) ; *Sorrels* v. *Matthews,* 129 *Ga.* 319 (58 S. E. 819, 13 L. R. A. (N. S.) 357, 12 Ann. Cas. 404) ; *Allen* v. *Railroad,* 54 *Ga.* 503; *Chapman* v. *Western Union Tel. Co.,* 88 *Ga.* 763 (supra) ; *So. Ry. Co.* v. *Jackson,* 146 *Ga.* 243 (2) (91 S. E. 28), 21 R. C. L. 1196 et seq. In the opinion of the writer the court below did not err in sustaining the general demurrer and dismissing the case.

·This case involves the question of "the right of privacy." The law respecting this right is purely modern. *Pavesich* v. *New England Life Ins. Co.,* supra; 21 R. C. L. 1196. What is this right? "The right of privacy is the right to be let alone; the right of a person to be free from unwarranted publicity. A more specific, but less accurate, definition is the right to live without having one's name, picture or statue, or that of a relative, made public against his will." 21 R. C. L. 1196. "The assertion of the right, at least so far as reported cases are concerned, seems to have been made for the first time in 1890. But it was not until 1905 that a court of last resort recognized this right and redressed its violation. Prior to 1890 the adjudicated cases, both in this country and in England, which might be said to have involved a right of privacy, were not based on the existence of such right, but were founded on a supposed right of property, or breach of trust or contract, or the like, and a

claim to a right of privacy, independent of a property or contractual right, or some right of a similar nature, had, up to that time, never been recognized in terms of any decision. Since that time there have been very few reported cases in which the right has been recognized and vindicated, and the trend of authority seems to be against it." Ib. The same author (21 R. C. L.) declares, that, although the reported decisions of courts of last resort in which the right of privacy is involved are not numerous, it is evident that the general trend of judicial opinion is against the view that this is a legal right for the violation of which there is a legal remedy. The majority of these courts have declined to recognize the interference with one's privacy as an injury in a legal sense. The reason on which this view is based is that the law has not provided for a right to possess or maintain without disturbance any particular condition of feeling, and that to enforce such a right at this time would do violence to settled principles by which the public have long been guided. The law can not undertake to remedy sentimental injury and it is not concerned with the feelings of a person, except as the discomfort and suffering are connected with the possession or enjoyment of property. Id. "In some jurisdictions equitable relief is granted only where some property right has been invaded or some pecuniary loss suffered. In consequence of this rule, at least with respect to the publication of another's picture, the courts have adopted the theory that the right of privacy is a property right. It has been said that a person has the same property in the use of his face for commercial purposes as in his literary compositions, and that, if his face has a value, the value is his exclusively until the use of the same be granted away to the public."

We have quoted at some length from a text based on decisions from other jurisdictions, and it is apparent that other jurisdictions are divided upon this question of the right to recover for a violation of the right of privacy. But it will be noted that there are no cases mentioned where the right to recover is not in the person sustaining the injury. In other words, it is a personal right. We have found no case exactly like the present, where the parents of an infant child a few days old have sued to recover for a violation of the right of privacy, unless it be Douglas v. Stokes, 149 Ky. 506 (149 S. W. 849, 42 L. R. A. (N. S.) 386, Ann. Cas. 1914B,

374), where it is evident that the cause of action arose from the breach of the contract made between the parents and the photographer, and they sought to recover in their own right. But, whatever the rule may be in other jurisdictions, this court has given its endorsement to the rule laid down in the case of Murray v. Lith. Co., supra, where it was held that a person can not sue to enjoin the publication of a portrait of his infant child, or for damages caused thereby. Judge Cobb, in a very well-considered and able opinion rendered in *Pavesich* v. *New England Life Ins. Co.*, supra, said, referring to the Murray case, supra: "This decision was undoubtedly correct; for, if there was any right to sue for a violation of the right of privacy, the cause of action was in the child and not in the parents." And there is no decision of this court, so far as we are aware, which holds to the contrary. It was further said in the Murray case: "Two insuperable objections arise to preclude any recovery; first, as conjuncta personæ, merely, plaintiff has no right of action for a wrong committed against the person of another, assuming the unauthorized publication of a portrait of the latter to be an unlawful invasion of his right to the enjoyment of personal privacy; secondly, as parent, his only right of action, growing out of wrongs committed against the person of his child, is for the recovery of damages for loss of services of the child, and the expenses to which he has been subjected in effecting a cure from the injury, elements of damages which are obviously wanting in this action; and even in an action for loss of services and expenses attending the cure, no recovery can be had for the outraged mental sensibilities of the parent." This court has said that the ruling made in the Murray case was "undoubtedly correct," and it may be added that it is in accord with other decisions of the highest courts of other jurisdictions. And see Roberson, an infant, by Margaret Bell, her guardian ad litem, v. Rochester Folding Box Co., 171 N. Y. 538 (64 N. E. 442, 59 L. R. A. 478, 89 Am. St. R. 828); 21 R. C. L. 1197, § 2, and cit. In *Allen* v. *R. Co.*, 54 *Ga.* 503, this court held that "a parent can not maintain an action for damages on account of the homicide of his infant child who at the time of his death was incapable of rendering him any services." It will be recalled that in the instant case the infant child was only a day or two old. And see, to the same effect as the ruling in the *Allen* case, *Sorrels* v. *Matthews*, 129 *Ga.* 319

(supra). In *Chapman* v. *W. U. Tel. Co.,* (supra), this court said: "Thus, where a father sues for a grievous physical injury to his minor child, he can not recover for the laceration of his parental feelings, even in conjunction with damages for the loss of services, though his mental suffering be necessarily severe and heartrending." In *So. Ry.* v. *Jackson,* supra, this court held that "The fact that a mother witnessed the mangling of her child and became frightened and suffered a severe nervous shock therefrom would not entitle her to recover" (citing a number of Georgia authorities). It may be added that it was only after a thorough and painstaking investigation and citation of the authorities bearing upon the right of privacy that Judge Cobb stated in the *Pavesich* case, quoting from the Murray case, "that a person can not sue to enjoin the publication of a portrait of his infant child, or for damages caused thereby, . . is undoubtedly correct." Even if the language of Judge Cobb in the *Pavesich* case was obiter, it was approved by the entire bench, and is in accord with the weight of outside authority, and of similar cases decided by this court.

But it is insisted, that, while plaintiffs may not have the right to recover damages in a case like the present, a person may prevent and restrain by equitable action the use of his child's picture for purposes of trade. If it is thought that in a case like the present the publication of the picture of one's malformed child should be enjoined, the answer is that recourse should be had to the legislative branch of the government, and not to the judicial. For, as was well said by Judge Cobb in the *Pavesich* case, "the courts have no authority to give a remedy, no matter how great the grievance." I am authorized by Mr. Presiding Justice Beck to state that he concurs in the above dissent.