### 19158. WATERS *v.* FLEETWOOD *et al.*

SUBMITTED NOVEMBER 14, 1955—DECIDED FEBRUARY 13, 1956.

*Fullbright & Duffey,* for plaintiff in error.

*Ingram & Tull,* contra.

HEAD, Justice. The statutes of this State do not define the "right of privacy," and there is no statutory law relating to a cause of action for an unauthorized invasion of the "right of privacy." The contention that such a right does in fact exist, under certain circumstances, was first sustained in this State in the decision of this court in *Pavesich* v. *New England Life Ins. Co.,* 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561), which is one of the leading cases in the United States on this subject. Cason *v.* Baskin, 155 Fla. 198 (20 So. 2d 243). In the *Pavesich* case this court declared that "the right of privacy is embraced within the absolute rights of personal security and personal liberty." The courts of some States have adopted the view that there is a legally enforceable "right of privacy," a few States have denied the existence of such a right, and others have not determined the question of the existence of such a right. 41 Am. Jur. 926, § 4; 77 C. J. S. 396, § 1; 138 A. L. R. 22-43.

In the *Pavesich* case, supra, this court recognized the fact that the right of privacy might collide with the right of the public to speak, write, and print matters of public interest. There is no decision in this State which is in point on its facts with the present case.

The courts of the State of Kentucky have recognized the right of privacy as a legal right. In Jones *v.* Herald Post Co., 230 Ky. 227 (18 S. W. 2d 972), the plaintiff brought an action for the invasion of her privacy. She alleged that, while walking along Chestnut Street in Louisville with her husband, he was assaulted by two men and stabbed to death. The defendant published an account of the incident, and in connection with the story used a

picture of the deceased and also one of the plaintiff, which were obtained without her consent. The Kentucky court, in denying the right of the plaintiff to recover, stated in part as follows: "The right of privacy may be defined as the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short, it is the right to be let alone. 21 R. C. L. 1197, 1198. There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence. Brents v. Morgan, 221 Ky. 763, 299 S. W. 967, 55 A. L. R. 964. Here Mrs. Jones and her husband were on the streets of the city of Louisville. Her husband was stabbed in her presence. It is not denied that she heroically attacked and struck the men who made the assault. On the contrary, she admits that she went to the defense of her husband. Therefore she was an innocent actor in a great tragedy in which the public had a deep concern. . . On the whole, we conclude that the publication of the photograph in connection with the language attributed to Mrs. Jones, even though she was incorrectly quoted, was not an invasion of her right of privacy."

In Smith v. Doss, 251 Ala. 250 (37 So. 2d 118), the right of privacy was recognized, but a recovery under the facts of that case was denied. The case was brought by Roberta Lindgren and Katrina Lindgren Mathews against a radio station, which had broadcast a program giving a life-sketch of their father. While a young man John Lindgren had disappeared under circumstances which indicated that he had been murdered. The person who found his team of mules and his bullet-pierced coat was accused of the supposed murder, and spent five months in jail before being acquitted of the charge because of insufficient evidence. Twenty-five years later Lindgren died in California of cancer and left a will in which his daughter Roberta was the principal beneficiary. The broadcast gave a detailed account of the events in his life. The Alabama court in its decision stated in part as follows: "Upon careful consideration we are satisfied that the right of privacy is supported by logic and the weight of authority. . . Its violation is a tort. . . But there is a conflicting principle in that the 'white light of publicity safeguards the public' and 'free

disclosure of truth is the best protection against tyranny.' 'Frequently the public has an interest in an individual which transcends his right to be let alone' and 'since the whole is greater than its component parts, private rights must often yield to public interest.' Michigan Law Review, Vol. 39, p. 526. Freedom of speech in broadcasting like freedom of the press, among other things, is to preserve untrammeled a vital source of public information. . . In other words the right of privacy does not prohibit the broadcast of matter which is of legitimate public or general interest. 138 A. L. R. page 49; 168 A. L. R. page 453. . . In the case at bar however much we may sympathize with the feelings of the plaintiffs, we consider that the broadcast was the subject of legitimate public interest. By his own acts John Lindgren made himself a public character. The passage of time could not give privacy to his acts because the story of John Lindgren is a part of the history of the community. It is embedded in the public record through the imprisonment of John Sobrey on a charge of murder and his fight in the courthouse to prove his innocence and to free himself from the stigma of that charge. The will of John Lindgren is a public record. The broadcast was based on fact. We see no reason why the right of privacy of daughters might not be violated by unwarranted and offensive publicity with reference to their deceased father, but conclude for the reasons given that the allegations in this case do not state a cause of action. 41 Am. Jur. p. 936."

In Metter v. Los Angeles Examiner, 35 Cal. App. 2d 304 (95 Pac. 2d 491), it appears from the allegations that the wife of the plaintiff had committed suicide by jumping from a public building. The defendant had obtained a picture of the deceased without the consent of the plaintiff, and had published it with an account of the suicide. In holding that the plaintiff had no right of action based on the violation of his right of privacy, it was stated in part as follows: "Whatever right of privacy Mrs. Metter had having died with her, we are nevertheless asked to recognize an asserted right by appellant to enforce a right of privacy which he himself possessed, based, as he says, upon what is denominated as a 'relational right' of privacy, or in other words, a right to be spared unhappiness through publicity concerning another person because of one's relationship to such person. . . In connection

with appellant's claim in this regard, the holding by the District Court of Appeal in the California case of Melvin *v.* Reid [112 Cal. App. 285], to the effect that when the incidents of a life are so public as to be spread upon a public record, they come into the knowledge and into the possession of the public and cease to be private, has a direct application to the facts presented in the case before us. Mrs. Metter's death, to which publicity was given, and in connection with which her picture was published, immediately set in motion, pursuant to the provisions of section 1510 of the Penal Code, an investigation by the coroner. Manifestly an individual cannot claim a right to privacy with regard to that which cannot, from the very nature of things and by operation of law, remain private. When, therefore, the circumstances surrounding the demise of Mrs. Metter became by operation of law the object of an investigation by a public officer and also became the subject-matter of a public record, the publication of the facts in connection therewith violated no one's right to privacy. The manner of Mrs. Metter's death imposed upon the coroner the duty of making an official investigation as to the cause of death, with regard to which all relevant circumstances became the proper subject of official inquiry. The incident described by respondent newspaper had to do with these circumstances, and therefore the publication thereof cannot be held to violate a right of privacy."

In Kelley *v.* Post Publishing Co., 327 Mass. 275 (98 N. E. 2d 286), the Massachusetts court dealt with an action based on the publication in a newspaper of a picture of the plaintiffs' daughter, a fifteen-year-old school girl, after her death in an automobile accident, the picture having been taken against the will of the parents. The question of whether or not there existed a legally protected right of privacy in Massachusetts was not decided, but it was said in part: "Assuming for the purposes of this case that the plaintiffs have a right of privacy, we fail to see how it was impaired by what the defendant did. Doubtless many persons at such a time would be distressed or annoyed by a publication of the sort here involved. It is a time above all others when they would prefer to be spared the anguish of wide or sensational publicity. . . The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not

actionable. Moreover, if the parents had a cause of action in a case like the present there would seem to be no reason why other members of the immediate family, the brothers and sisters, whose sensibilities may also have been wounded should not also be permitted to sue. The only reference to the plaintiffs was that the girl whose body appeared in the photograph was their daughter. This can hardly be said to interfere with their privacy. At least, if there is such a right in this Commonwealth we would not be prepared to extend it to a case like the present."

The extracts from the above cases illustrate the tendency of courts of other jurisdictions to hold that, where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy. We concur in this view. There are many instances of grief and human suffering which the law can not redress. The present case is one of those instances. Through no fault of the petitioner or her deceased child, they became the objects of widespread public interest. The murder of the petitioner's daughter necessarily became a matter of legal investigation and the subject matter of public records. During the pendency and continuation of the investigation, and until such time as the perpetrator of the crime may be apprehended and brought to justice under the rules of our society, the matter will continue to be one of public interest, and the dissemination of information pertaining thereto would not amount to a violation of the petitioner's right of privacy.

While it is not the publication of photographs in a newspaper which is complained of in the present action, but the sale of copies of the same photographs which appeared in the newspaper in connection with the news story, the same rule must apply as would apply to the publication of the photographs in the paper. We might point out, in this connection, that, from an observation of the pictures attached to the record, it appears that a person viewing them could not identify the deceased. Both photographs were taken from the rear of the body, and no facial features are visible. The body is wrapped in some heavy covering, fastened with chains. Any person observing the photographs could know that they are photographs of the deceased only by reason of the publicized facts relating to the recovery of the body.

In holding that the facts alleged in the petition do not state a cause of action for a violation of the petitioner's right of privacy, we do not pass on the question of whether or not there might be a "relational" right of privacy in this State. The excerpts herein quoted show that there is a wide divergence of views in different jurisdictions on this question. See also 138 A. L. R. 50-55. The decision in *Bazemore* v. *Savannah Hospital*, 171 *Ga.* 257 (155 S. E. 194), was not a unanimous decision.

The trial court did not err in sustaining the general demurrers to the petition.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Wyatt, P. J., who dissent.*