JOSEPH H. BREMMER et ux., appellants, v. JOURNAL-TRIBUNE PUBLISHING COMPANY, appellee.

No. 48768.

(Reported in 76 N.W.2d 762)

818

MAY 9, 1956.

John Hutchinson, of Sioux City, for appellants.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellee.

OLIVER, J.—This is an action for damages brought by the parents of eight-year-old Jimmy Bremmer, deceased, for invasion of their right of privacy. The petition alleges plaintiffs' son Jimmy disappeared from his Sioux City home and remained missing for approximately one month until September 29, 1954, when his mutilated and decomposed body was discovered in a field near Sioux City; that on said date the evening edition of defendant-newspaper carried on the front page a large picture of the site where the body was found; "that toward the bottom center of the photograph the mutilated and decomposed body of Jimmy Bremmer lay exposed; that because the picture of the body was exposed to the public view and more particularly to the view of the parents, Mr. and Mrs. Joseph Bremmer, the Constitutional right of privacy of Mr. and Mrs. Joseph Bremmer was invaded; further that because of the publication of the aforementioned photograph by the Journal-Tribune Publishing Company, the parents of Jimmy Bremmer, Mr. and Mrs. Joseph Bremmer, have suffered untold mental anguish and humiliation and will continue to do so in the future; that by reason of such suffering and humiliation, Mr. and Mrs. Joseph Bremmer have been damaged in the sum of Thirty-five Thousand Dollars ($35,-000)." Judgment for that amount is prayed.

In Division I of its answer, defendant denied any rights of plaintiffs were violated or invaded. Divisions II, III and IV alleged the circumstances of the disappearance and discovery of Jimmy Bremmer were matters of great public interest and the pictures and news items published by defendant were privileged and plaintiffs suffered no legal wrong; that plaintiffs solicited the widest possible publicity and waived and consented to the same, including the pictures complained of; and that there was no such right of privacy as claimed by plaintiffs.

Plaintiffs moved to strike Divisions II, III and IV as conclusions, improper in substance, meaningless, incompetent, not based on facts pleaded, and matters at best evidentiary. The motion to strike was overruled. Plaintiffs replied, denying each

and every allegation in Divisions II, III and IV of the answer. Thereafter, defendant moved for dismissal, asserting plaintiffs' motion to strike amounted to an application to adjudicate points of law under R. C. P. 105, Separate Adjudication of Law Points, and that the ruling thereon, which, defendant asserted, held in effect there was no cause of action in Iowa based upon invasion of right of privacy, disposed of all the issues of the case, became the law of the case and was binding upon all parties in any subsequent proceedings.

The trial court sustained the motion to dismiss. From the judgment rendered against them thereon, plaintiffs have appealed.

I. Some procedural aspects of the case will be first considered. Defendant's contention the order overruling plaintiffs' motion to strike had the effect of an order under R. C. P. 105, and thus became the law of the case is not well founded. An application to adjudicate law points under R. C. P. 105 is not technically a motion and the effect of a ruling or order thereon is not the same as the effect of an order on a motion assailing a pleading. See Litchford v. Iowa-Illinois Gas & Electric Co., 247 Iowa 947, 75 N.W.2d 346. The order overruling plaintiffs' motion to strike was not an adjudication against plaintiffs as an order under R. C. P. 105 would have been. After the order was made plaintiffs filed a reply, as was their right. See Ranslow v. U. S. Fidelity & Guaranty Co., 243 Iowa 731, 733, 734, 53 N.W.2d 247, 248; R. C. P., rules 73 and 104c. Nor did the order become the law of the case which the trial court was required to follow. Had the proposition been properly presented to the trial court again, it could have made a contrary order. Kuiken v. Garrett, 243 Iowa 785, 790–793, 51 N.W.2d 149, 153, 154, 41 A. L. R.2d 1397.

However, the trial court did not determine defendant's contention the order overruling the motion to strike became the law of the case. The order sustaining the motion to dismiss shows the court considered "that the present pleading attacks the validity of the petition, and particularly whether or not any cause of action is stated therein. * * * The court is of the opinion that said petition does not state a cause of action against the defendant." Hence, it appears the distinguished trial court treated the motion to dismiss as a motion for judgment on the pleadings under R. C.

P. 222. See Kriv v. Northwestern Securities Co., 237 Iowa 1189, 1195, 24 N.W.2d 751; article by Charles W. Joiner, 32 Iowa Law Review 417, 419. Plaintiffs do not complain of this procedure and its propriety need not be here determined.

 ██ II. The "right of privacy" has been defined as the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity. 77 C. J. S., Right of Privacy, section 1; 41 Am. Jur., Privacy, section 2; Prosser's Handbook of the law of Torts, 2nd Ed., 1955, chapter 20, Privacy. Violation of the right of privacy is a tort.

 ██ Defendant points out that neither the statutes of Iowa nor the decisions of this court recognizes the right of privacy. Hence, it contends no action for the violation of such right may be maintained in Iowa. With this contention we do not agree.

Prior to 1890 no English or American court had ever granted relief expressly based upon the invasion of such a right. In that year attention was directed to it by an article by Samuel D. Warren and Louis D. Brandeis in 4 Harvard Law Review 193, entitled, "The Right to Privacy." Later the doctrine was advocated in numerous articles by other writers and statutes relating to it were adopted in several states. The first decision by the highest appellate court of a state, recognizing the doctrine, was Pavesich v. New England Life Ins. Co., 1905, 122 Ga. 190, 50 S. E. 68, 69 L. R. A. 101, 106 Am. St. Rep. 104, 2 Ann. Cas. 561. That decision has been followed by many courts of this country. Now the courts of approximately twenty states recognize the right of privacy. In three other states it is limited by statute and in only four do the courts reject it. A footnote to Hazlitt v. Fawcett Publications, Inc., 1953, D. C. Conn., 116 F. Supp. 538, 542, 543, lists these to 1953. There are annotations on the right of privacy in 138 A. L. R. 22, 168 A. L. R. 446, and in 14 A.L.R.2d 750. See also The Right of Privacy, Louis Nizer, 39 Michigan Law Review 526.

Section 867, Restatement of the Law, Torts, entitled, "Interference with Privacy", states: "A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

822

The modern doctrine of the right of privacy is a development of the common law to fill a need for the protection of the interest which a person has in living without unwarranted publicity. The doctrine is supported by the great weight of authority in this country and we are satisfied it is sound. Hence, we hold an action for interference with such right may be maintained in this jurisdiction.

III. The ultimate question here is whether plaintiffs' pleading alleged facts sufficient to constitute an unwarranted invasion of their right of privacy. It is conceded the picture of the portion of the field with the body thereon was part of a current news item published in a newspaper. In argument plaintiffs refer to statements in "accompanying articles" in the newspaper. Obviously, the finding of the body of the local boy who had been missing for a month was a top-rank news story. Plaintiffs concede, "it may be true that the public was interested in the fact that the missing Bremmer boy was found * * *." A general rule set out in the comment to section 867, Restatement of the Law, Torts, page 400, and repeated in many decisions is: "One who unwillingly comes into the public eye * * * is subject to the same limitations upon his right to be let alone. Community custom achieves the same result with reference to one * * * or the subject of a striking catastrophe. Both groups of persons are the objects of legitimate public interest during a period of time after their conduct or misfortune has brought them to the public attention * * *, they are subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villains and victims."

77 C. J. S., Right of Privacy, section 2, page 399, states in boldface: "* * * the dissemination of news or news events does not generally constitute an invasion of the right [of privacy]."

Hazlitt v. Fawcett Publications, Inc., 1953, D. C. Conn., 116 F. Supp. 538, 545, exemplifies the difference between the dissemination of news and a publication not a vehicle of information. There the court stated with reference to the privacy count: "If * * * the story * * * was fictionalized * * *, I may not now rule, as a matter of law, that it was of legitimate public interest because informational and on that account not actionable. * * *

Thus this count may be deemed to state an actionable claim on the theory that the published story was in essence not a vehicle of information but rather a device to facilitate commercial exploitation."

Cason v. Baskin, 1944, 155 Fla. 198, 20 So.2d 243, 168 A. L. R. 430, is a similar decision.

Leverton v. Curtis Pub. Co., 1951, 3 Cir., Pa., 192 F.2d 974, 976, states with reference to the publication in a newspaper of a picture of that plaintiff as she lay in a street immediately after having been struck by an automobile, "If it invaded the right of the plaintiff to stay out of public attention, it was a privileged invasion, her interest in being left alone being overbalanced by the general public interest in being kept informed."

Plaintiffs state: "The identification of the body of Jimmy Bremmer was made from articles of clothing taken from the remains." It is not pleaded or contended the body was unclothed or that any of its organs or private parts were shown in the picture. There is no suggestion of indecent exposure. The only complaint is the picture of "the mutilated and decomposed body of Jimmy Bremmer * * * was exposed to public view and more particularly to the view of the parents * * *."

Waters v. Fleetwood, 1956, 212 Ga. 161, 91 S.E.2d 344, 345, 348, was a right-of-privacy action by a mother involving photographs of the body of her fourteen-year-old murdered daughter, after it had been removed from a river. The petition alleged: "These photographs were taken at close range, showing the gruesome effects of an atrocious crime, and displaying the dead body of the petitioner's child as an object of public curiosity. The photographs showed the decomposition of part of the child's body and showed it wrapped in chains." The trial court sustained a general demurrer to the petition. After considering decisions from various jurisdictions the Supreme Court of Georgia affirmed, holding the facts alleged did not state a cause of action. The decision states:

"The extracts from the above cases illustrate the tendency of courts of other jurisdictions to hold that, where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a

violation of no one's legal right of privacy. We concur in this view. There are many instances of grief and human suffering which the law cannot redress. The present case is one of those instances. Through no fault of the petitioner or her deceased child, they became the objects of widespread public interest. * * * the dissemination of information pertaining thereto would not amount to a violation of the petitioner's right of privacy."

The Waters case was based upon the sale of copies of the pictures which had been published in the newspaper. The court held the same rule would apply to the sale as to the publication. That point need not be determined in the case at bar which involves only publication in a newspaper.

The Waters case was decided by the same court which decided the Pavesich case, supra, in 1905, which, we have noted, was the first decision by a state court of final jurisdiction to recognize the doctrine of the right of privacy, and which is considered a leading case. Moreover, it is the same court which, in 1930, decided Bazemore v. Savannah Hospital, 171 Ga. 257, 155 S. E. 194, relied upon by plaintiff. That it did not consider the Bazemore case in point is evident from the statement in Waters: "There is no decision in this State which is in point on its facts with the present case." Later the court in the Waters case disposed of the Bazemore case with the statement it "was not a unanimous decision."

In Kelley v. Post Publishing Co., 1951, 327 Mass. 275, 277, 279, 98 N.E.2d 286, 287, 288, defendant published a picture of the mutilated body of plaintiffs' fifteen-year-old daughter, killed in an automobile accident. The pleading alleged the picture " 'was a gross caricature and depicted her features in a deformed and hideous manner and distorted * * * [her] features'." The trial court sustained a demurrer to the petition. In affirming, the court stated:

"Doubtless many persons at such a time would be distressed or annoyed by a publication of the sort here involved. It is a time above all others when they would prefer to be spared the anguish of wide or sensational publicity. But if the right asserted here were sustained, it would be difficult to fix its boundaries.

A newspaper account or a radio broadcast setting forth in detail the harrowing circumstances of the accident might well be as distressing to the members of the victim's family as a photograph of the sort described in the declaration. A newspaper could not safely publish the picture of a train wreck or of an airplane crash if any of the bodies of the victims were recognizable.

"* * * The publication of such a photograph might very well be indelicate or lacking in good taste, but it would not in our opinion, for the reasons already discussed, constitute an actionable wrong to the plaintiffs."

In Abernathy v. Thornton, 1955, 263 Ala. 496, 83 So.2d 235, 237, the photograph of the body of plaintiffs' son, shot by a woman, showed the metal bullet protruding from his head. In holding the complaint insufficient the court discussed authorities and quoted with approval from a text, "There can be no privacy in that which is already public", and "It does not exist in the dissemination of news and news events * * *."

Jacova v. Southern Radio and Television Co., 1955, Fla., 83 So.2d 34, 36, 40, involved a canned film of gambling raids in one of which plaintiff (apparently a bystander) was shown. A summary judgment was affirmed upon appeal on the ground the publication was in connection with the dissemination of legitimate news items. The decision quotes with approval:

" 'The public has an interest in the free dissemination of news. This interest was well stated by that great American, Thomas Jefferson, in the following words: "The only security of all is in a free press. The force of public opinion cannot be resisted, when permitted freely to be expressed. The agitation it produces must be submitted to. It is necessary to keep the waters pure. *No government ought to be without censors; and where the press is free no one ever will.*" * * * it is vital that no unreasonable restraints be placed upon the working news reporter or the editorial writer.' "

In Jones v. Herald Post Co., 230 Ky. 227, 229, 18 S.W.2d 972, 973, plaintiff's picture was published with a story of her conduct in resisting and attacking her husband's assassins. A

826

demurrer to her petition was sustained. The judgment thereon was affirmed with the statement, "* * * she was an innocent actor in a great tragedy in which the public had a deep concern."

Samuel v. Curtis Pub. Co., 1954, D. C. Cal., 122 F. Supp. 327, was based upon a published photograph showing plaintiff attempting to dissuade a young woman from committing suicide. Plaintiff in Berg v. Minneapolis Star & Tribune Co., 1948, D. C. Minn., 79 F. Supp. 957, was engaged in family litigation. There were summary judgments for defendants in these cases.

Among other cases in which the pleadings of plaintiff were held insufficient are: Smith v. Doss, 251 Ala. 250, 37 So.2d 118, 119, Themo v. New England Newspaper Pub. Co., 306 Mass. 54, 27 N.E.2d 753, and Elmhurst v. Pearson, 1945, 80 App. D. C. 372, 153 F.2d 467.

In Sidis v. F-R Pub. Corp., 1940, 2 Cir., N. Y., 113 F.2d 806, 809, 138 A. L. R. 15, 19, 20, a count of the petition based upon the right of privacy was held insufficient. The decision states also: "We express no comment on whether or not the news worthiness of the matter printed will always constitute a complete defense. Revelations may be so intimate and so unwarranted in view of the victim's position as to outrage the community's notions of decency. * * * Regrettably or not, the misfortunes and frailties of neighbors and 'public figures' are subjects of considerable interest and discussion to the rest of the population. And when such are the mores of the community, it would be unwise for a court to bar their expression in the newspapers, books, and magazines of the day."

Plaintiffs refer to Douglas v. Stokes, 1912, 149 Ky. 506, 149 S. W. 849, 850, 42 L. R. A., N. S., 386, Ann. Cas. 1914B 374, and Bazemore v. Savannah Hospital, 1930, supra, 171 Ga. 257, 155 S. E. 194. In Douglas v. Stokes defendant was employed to photograph for plaintiffs the nude corpse of their malformed infant twins. He made additional copies and secured a copyright from the patent office. The court held this was a breach of the agreement, for which damages were allowable. Douglas v. Stokes is cited in the footnote in 41 Am. Jur., Photography, Portrait Painting, and Engraving, section 3, page 127, along with similar cases.

Reference has already been made to the Bazemore case, which appears to have been brushed aside in a later decision by the same court, Waters v. Fleetwood, supra, 212 Ga. 161, 91 S.E.2d 344. In Bazemore, pictures of the nude body of the deformed male infant with its sexual organs exposed, together with the theretofore secret facts, were wrongfully secured and published. It is an extreme case, involving the violation of a trust, the wrongful publicizing of the secret physical deformity and the sale commercially of the pictures of the nude and deformed body.

Neither of the foregoing decisions is here in point. Nor are we able to agree with some of the conclusions which have been expressed, as to their meanings. Perhaps they should be classed with cases out of which some readers seem able to get more than the courts put in.

Plaintiffs state: "While it may be true that the public was interested in the fact that the missing Bremmer boy was found and whether or not he was dead or alive, the public had no legitimate interest or concern in the condition of the body." That conclusion is without support. From a news standpoint the public is interested in the appearance of the body of such a local victim. Such appearance may be pictured by words or by photographs or both.

There is a good statement in Leverton v. Curtis Pub. Co., 1951, D. C. Pa., 97 F. Supp. 181, affirmed 192 F.2d 974: "The plaintiff says the picture is simply sensational, which it also is, but the courts are not concerned with the canons of good taste, and pictures which startle, shock, and even horrify may be freely published, provided they are not libelous or indecent, if the subject of the picture consents or if the occasion is such that his right of privacy does not protect him from the publication. The right is, of course, variable and in some cases it may dwindle almost to the vanishing point, as where an individual, perhaps involuntarily, becomes involved in some newsworthy event or some situation in which the public has a legitimate interest."

Barber v. Time, Inc., 348 Mo. 1199, 1206, 159 S.W.2d 291, 295, states: "The determination of what is a matter of public

concern is similar in principle to qualified privilege in libel. It is for the court to say first whether the occasion or incident is one of proper public interest. (As it must say whether an occasion is one to which qualified privilege extends in libel.)"

Mills v. Denny, 245 Iowa 584, 589, 63 N.W.2d 222, 225, 40 A. L. R.2d 933, 938, states: "Nevertheless the rule is quite well settled in all jurisdictions that the question as to whether or not there is a privilege, absolute or qualified, under the circumstances or occasion involved, is for the court."

It is conceded the incident of the finding of the body of the missing local boy was one of proper public interest. In other words, the event was newsworthy. Under the decisions cited herein, it is clear the facts pleaded by plaintiffs were insufficient to state a cause of action against defendant. The trial court was correct in so concluding.—Affirmed.

GARFIELD, WENNERSTRUM, SMITH, THOMPSON, and PETERSON, JJ., concur.

LARSON, C. J., and BLISS and HAYS, JJ., dissent.

LARSON, C. J. (dissenting)—I am unable to concur in the conclusions reached in Division III of the majority opinion. Having correctly determined in Divisions I and II that Iowa does recognize the right of privacy, and that the court did not adjudicate against plaintiffs under R. C. P. 105 by overruling their motion to strike certain divisions of defendant's answer, the opinion announces the rule that as to newsworthy matter the press is accorded a privilege to publish, limited only as to indecent matter. Then the majority conclude that plaintiffs' petition did not state a cause of action, although they concede it set forth that "the mutilated and decomposed body of Jimmy Bremmer * * * was exposed to public view and more particularly to the view of the parents * * *." They say: "There is no suggestion of indecent exposure." I am unable to adopt that conclusion, for I think that under those allegations plaintiffs could show what might be determined was an indecent picture of the boy's body.

Under this record, however, the court refuses to examine

the alleged improper picture. As to whether or not it would fall within the indecent category cannot be determined even by the court under this inconsistent determination. Actually by dismissing this petition at this time, without a hearing thereon, we shall be going much further than any of the authorities cited by the defendant or set forth in the majority opinion. In those cases the court at least saw and heard the evidence before summarily dismissing the cause. Here the majority holds that once it appears the matter is of legitimate public interest, the privilege of the press is absolute—unless possibly the picture is alleged to be indecent—and the individuals' right of privacy is completely abrogated. With such a determination I cannot agree.

I also cannot agree with the application of this rule by the courts of Georgia and Alabama in their apparent determination that pictures of news interest, no matter how morbid and repulsive they may be, or how much they may needlessly hurt anyone concerned, are privileged and that publishers are thereafter governed solely by their own consciences and sense of decency in determining whether or not such pictures are printed.

I am not advocating that the courts or anyone else try to act as censors of the press, but who will protect the invaded rights of citizens if the courts do not? It is not censoring, as I view it, to provide a remedy for a wrong, once the wrong has been done.

It is my feeling that we should take this opportunity to clearly express a sound position on this important question. We should recognize the right of privacy by more than lip service. We should limit and define the privilege accorded the press and radio to invade this right of individual privacy here in Iowa. It must be done sometime. This is not a new thought, for in Prosser on Torts, 2d Ed., pages 643, 644, we find the following statement:

"Again the privilege is not unlimited, but the line is a most difficult one to draw. The cases in which the privilege has been found to be exceeded have involved outrageous methods such as the theft of a photograph, or *extreme catering to the morbid and the sensational,* such as the publication of the picture of the

830

plaintiff's dead deformed child, * * *. The best statement that can be made is that the distinction probably is that found in other cases of the intentional infliction of mental suffering, between conduct which outrages the common decencies and goes beyond what the public mores will tolerate, and that which the plaintiff must be expected under the circumstances to endure." (Emphasis supplied.)

Clearly, then, the privilege of the publisher is not absolute. But because the line is difficult to draw, we should not try to avoid it this way. We are constantly called upon to draw distinctions just as difficult, and we try to do so for the benefit of bench and bar. I would reverse this judgment and order the trial court to at least hear and see the evidence before determining, under such guidance as we can provide at this time, whether or not as a matter of law defendant did breach the privilege to invade plaintiffs' right of privacy extended to it under these circumstances.

BLISS and HAYS, JJ., join in this dissent.