# IN THE SUPREME COURT OF IOWA

No. 07–1103

Filed December 19, 2008

**IN RE THE MARRIAGE OF JEFFREY E. TIGGES and CATHY J. TIGGES**

**Upon the Petition of**

**JEFFREY E. TIGGES,**

Appellant,

And Concerning

**CATHY J. TIGGES,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Robert J. Curnan, Judge.

A husband appeals a judgment for money damages in favor of his wife for invasion of her privacy through surreptitious videotaping of her activities in her bedroom. **AFFIRMED.**

Jennifer A. Clemens-Conlon of Clemens, Walters, Conlon & Meyer, L.L.P., Dubuque, for appellant.

Robert L. Sudmeier of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

**HECHT, Justice.**

A husband surreptitiously recorded on videotape his wife's activities in the marital home. The district court entered a judgment for money damages in favor of the wife who claimed the videotaping constituted a tortious invasion of her privacy. The court of appeals affirmed the judgment, rejecting the husband's contention the wife had no reasonable expectation of privacy in the marital home she shared with him. On further review of the decision of the court of appeals, we conclude a claim for invasion of privacy is legally viable under the circumstances of this case, and therefore affirm the judgment.

I.      **Factual and Procedural Background.**

Upon our de novo review we make the following findings of fact. The long relationship between Jeffrey and Cathy Tigges was plagued by trust issues. Even before their marriage, Jeffrey and Cathy had recorded each other's telephone conversations without the other's knowledge and consent. Apparently undeterred by their history of discord, they were married on December 31, 1999.

Jeffrey surreptitiously installed recording equipment and recorded Cathy's activities during the marriage in the marital home.[1] The equipment included a video cassette recorder positioned above a ceiling, a camera concealed in an alarm clock located in the bedroom regularly used by Cathy, and a motion sensing "optical eye" installed in the

---

[1]The district court found the videotaping occurred when "the parties were separated and residing in separate residences." The court of appeals concluded "the incidents testified to by Cathy clearly occurred while the parties were still residing in the same house together as husband and wife." We find the record lacks sufficient clarity to determine by a preponderance of the evidence whether Jeffrey was residing in the marital home or in a separate residence when he installed the cameras and when the recording was accomplished. A resolution of this factual issue is not essential to our decision, however, as we conclude Jeffrey's activities intruded on Cathy's right to privacy whether or not he was residing in the marital home when the surreptitious videotaping occurred.

headboard of the bed in that room. Cathy discovered her activities in the bedroom had been recorded when she observed Jeffrey retrieving a cassette from the recorder in August 2006.

During the ensuing confrontation, Jeffrey damaged the cassette. Cathy took possession of it and restored it with the assistance of others. When she viewed the tape, Cathy discovered it revealed nothing of a graphic or demeaning nature. Although the tape was not offered in evidence, we credit Cathy's testimony that it recorded the "comings and goings" from the bedroom she regularly used. Notwithstanding the unremarkable activities recorded on the tape, Cathy suffered damage as a consequence of Jeffrey's actions. She felt violated, fearing Jeffrey had placed, or would place, other hidden cameras in the house.

Jeffrey filed a petition for dissolution of marriage. In her answer, Cathy alleged she was entitled to compensation for Jeffrey's "tortious . . . violation of her privacy rights" as a consequence of his surreptitious placement of the video equipment and recording of her activities. Cathy alleged she should be awarded tort damages in this dissolution action or, in the alternative, the claim should be "reserved upon entry of [the] Decree."[2] The district court found Jeffrey had invaded Cathy's privacy and entered judgment in the amount of $22,500.

Jeffrey contends on appeal the judgment against him for money damages must, as a matter of law, be reversed. He urges this court to conclude his actions were not tortious because Cathy had no reasonable expectation of privacy precluding his recording of her activities in the marital home. Jeffrey further asserts on appeal Cathy cannot recover

---

[2]Although Iowa Code section 598.3 provides "no cause of action, save for alimony, shall be joined" with a dissolution action, the parties tried the tort claim in the dissolution action without objection and Jeffrey has not raised the joinder question in this appeal.

damages for the alleged invasion because the only publication of the tape was undertaken by Cathy when she permitted her sister to watch it. If we conclude surreptitious interspousal taping is actionable under the circumstances presented here, Jeffrey contends Cathy's claim is nonetheless barred by the applicable statute of limitations.

## II.  Scope of Review.

Cathy's claim for invasion of privacy was tried in this dissolution action. Dissolution actions are tried in equity. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). We review equitable actions de novo. Iowa R. App. P. 6.4; *Keener*, 728 N.W.2d at 193. When an action at law and an action in equity are consolidated and tried in equity, our review of both matters is de novo. *Knigge v. Dencker*, 246 Iowa 1387, 1389–90, 72 N.W.2d 494, 495 (1955). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.14(6)(*g*); *see Keener*, 728 N.W.2d at 193.

## III.  Discussion.

### A.  The Expectation of Privacy within the Marital Relationship.

Although this court has never been called upon to decide whether a claim may be brought by one spouse against the other for an invasion of privacy resulting from surreptitious videotaping, the question has been confronted by courts in other jurisdictions. In *Miller v. Brooks*, 472 S.E.2d 350 (N.C. Ct. App. 1996), a wife hired private investigators to install a hidden camera in the bedroom of her estranged husband's separate residence. 472 S.E.2d at 352–53. The husband discovered the hidden equipment and sued both his wife and her agents who assisted her in its installation. *Id.* The trial court granted summary judgment in favor of the defendants. *Id.* at 353. On appeal from that ruling, the

North Carolina Court of Appeals noted the expectation of privacy "might, in some cases, be less for married persons than for single persons," but that "such is not the case . . . where the spouses were estranged and living separately." *Id.* at 355. Finding no "evidence [the husband] authorized his wife or anyone else to install a video camera in his bedroom," the appellate court reversed the summary judgment, concluding issues of fact remained for trial in the husband's claims against his wife and her agents. *Id.*

As we have already noted, in the case before this court the record is unclear whether Jeffrey installed the equipment and accomplished the recording of Cathy's activities before or after the parties separated. We conclude, however, the question of whether Jeffrey and Cathy were residing in the same dwelling at the time of Jeffrey's actions is not dispositive on this issue. Whether or not Jeffrey and Cathy were residing together in the dwelling at the time, we conclude Cathy had a reasonable expectation that her activities in the bedroom of the home were private when she was alone in that room. Cathy's expectation of privacy at such times is not rendered unreasonable by the fact Jeffrey was her spouse at the time in question, or by the fact that Jeffrey may have been living in the dwelling at that time.

Our conclusion is consistent with the decision reached by the Texas Court of Appeals in *Clayton v. Richards*, 47 S.W.3d 149 (Tex. App. 2001). In that case, Mrs. Clayton hired Richards to install video equipment in the bedroom shared by Mrs. Clayton and her husband. *Clayton*, 47 S.W.3d at 153–54. After discovering the scheme, Mr. Clayton sued his wife and Richards, alleging invasion of his privacy. The trial court denied Mrs. Clayton's motion for summary judgment, but granted the one filed by Richards. *Id.* at 151. On appeal, the Texas

Court of Appeals concluded Richards' liability turned on whether Mrs. Clayton's acts were tortious under Texas law.  *Id.* at 154 ("If [Mrs. Clayton's] acts were tortious, and if [Richards] knowingly aided her in the commission of the acts, then his acts were tortious also.").  In its analysis of whether Mr. Clayton had a reasonable expectation of privacy in the bedroom he shared with his spouse, the court observed:

> A spouse shares equal rights in the privacy of the bedroom, and the other spouse relinquishes some of his or her rights to seclusion, solitude, and privacy by entering into marriage, by sharing a bedroom with a spouse, and by entering into ownership of the home with a spouse. *However, nothing in the . . . common law suggests that the right to privacy is limited to unmarried individuals.*
>
> *When a person goes into the privacy of the bedroom, he or she has a right to the expectation of privacy in his or her seclusion.  A video recording surreptitiously made in that place of privacy at a time when the individual believes that he or she is in a state of complete privacy could be highly offensive to the ordinary reasonable person.*  The video recording of a person without consent in the privacy of his or her bedroom *even when done by the other spouse* could be found to violate his or her rights of privacy.
>
> As a spouse with equal rights to the use and access of the bedroom, it would not be illegal or tortious as an invasion of privacy for a spouse to open the door of the bedroom and view a spouse in bed.  It could be argued that a spouse did no more than that by setting up a video camera, but that the viewing was done by means of technology rather than by being physically present.  It is not generally the role of the courts to supervise privacy between spouses in a mutually shared bedroom.  *However, the videotaping of a person without consent or awareness when there is an expectation of privacy goes beyond the rights of a spouse because it may record private matters, which could later be exposed to the public eye.  The fact that no later exposure occurs does not negate that potential and permit willful intrusion by such technological means into one's personal life in one's bedroom.*

*Id.* at 155–56 (citations omitted) (emphasis added).

Prior to catching Jeffrey in the act of removing the cassette from the concealed recorder, Cathy was unaware of his video surveillance

scheme. Citing our decision in *Stessman v. American Black Hawk Broadcasting Co.,* 416 N.W.2d 685 (Iowa 1987), Jeffrey nonetheless contends his conduct is not actionable because Cathy was in "public view" in the home he owned jointly with her. 416 N.W.2d at 687. In *Stessman,* the plaintiff sued a broadcasting company for invasion of privacy for videotaping her, despite her objection, while she was eating in a public restaurant, and publishing the tape. *Id.* The district court dismissed Stessman's petition for failure to state a claim, concluding she was, as a matter of law, in "public view" at the time the recording was made. *Id.* at 686. On appeal, this court rejected the notion that Stessman was in "public view" as a matter of law. *Id.* at 687 (noting it was not inconceivable the plaintiff was seated in a private dining room within the restaurant at the time the recording was made). "[T]he mere fact a person can be seen by others does not mean that person cannot legally be 'secluded.' " *Id.* (quoting *Huskey v. NBC, Inc.,* 632 F. Supp. 1282, 1287–88 (N.D. Ill. 1986)). Furthermore, "visibility to some people does not strip [the plaintiff] of the right to remain secluded from others." *Id.* (quoting *Huskey,* 632 F. Supp. at 1287–88).

Even if we assume for purposes of our analysis that Cathy was observed by other family members including Jeffrey, who, from time to time, entered the bedroom with her knowledge and consent, she was not in "public view" and did not forfeit her right to seclusion at other times when she was alone in that room. As we observed in *Stessman,* "[p]ersons are exposed to family members and invited guests in their own homes, but that does not mean they have opened the door to television cameras." *Id.* (quoting *Huskey,* 632 F. Supp. at 1287–88). Any right of access to the bedroom held by Jeffrey did not include the right to videotape Cathy's activities without her knowledge and consent.

We find persuasive the courts' characterizations of a spouse's right of privacy in *Miller* and *Clayton*. Cathy did not forfeit through marriage her expectation of privacy as to her activities when she was alone in the bedroom. Accordingly, we conclude Cathy had a reasonable expectation of privacy under the circumstances presented in this case.

**B.    The Elements of an Invasion of Privacy Claim.** We first recognized a cause of action for violation of a privacy interest in *Bremmer v. Journal-Tribune Publishing Co.*, 247 Iowa 817, 76 N.W.2d 762 (1956). We defined the privacy interest as "the right of an individual to be left alone, to live a life of seclusion, to be free of unwarranted publicity." *Bremmer*, 247 Iowa at 821–22, 76 N.W.2d at 764–65; *see Stessman*, 416 N.W.2d at 686–87 (discussing the history of the right to privacy under Iowa case law). We have adopted the invasion of privacy principles set out in Restatement (Second) of Torts (1977). *See Stessman*, 416 N.W.2d at 686.

The right to privacy can be invaded by:

(a) *unreasonable intrusion upon the seclusion of another* . . .; or (b) appropriation of the other's name or likeness . . .; or (c) unreasonable publicity given to the other's private life . . .; or (d) publicity that unreasonably places the other in a false light before the public . . . .

Restatement (Second) of Torts § 652A(2) (emphasis added). As in *Stessman*, we focus our analysis in this case on the "intrusion upon seclusion" theory. *See* 416 N.W.2d at 686–87. Under this theory,

[o]ne who *intentionally intrudes*, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be *highly offensive to a reasonable person.*[3]

---

[3]Restatement section 652B's comments further explain: (a) an intrusion "does *not* depend upon any *publicity* given to the person whose interest is invaded or to his affairs. . . ."; (b) the intrusion may "be by the use of the defendant's senses, *with or*

Restatement (Second) of Torts § 652B (emphasis added).

In *Stessman,* we noted a plaintiff alleging this tort must prove (1) "the defendant intentionally intruded upon the seclusion that the plaintiff 'has thrown about [his or her] person or affairs,' " and (2) the intrusion "would be 'highly offensive to a reasonable person.' " 416 N.W.2d at 687 (quoting Restatement (Second) of Torts § 652B cmt. c (first quoted material), and *Winegard v. Larson,* 260 N.W.2d 816, 822 (Iowa 1977) (second quoted material)). However, if the plaintiff is already in public view at the time of the alleged invasion, the defendant is not liable. *Id.*

1. *Intentional intrusion.* Cathy had a reasonable expectation of privacy in the bedroom when she was alone in that room. Jeffrey admitted videotaping her activities in the bedroom and various other rooms in the home. It is undisputed that he covertly installed the video recorder, recorded Cathy's bedroom activities, and attempted to retrieve a cassette from the recorder. We find this conduct clearly constituted an intentional intrusion upon Cathy's privacy.

2. *Highly offensive to a reasonable person.* Jeffrey contends the judgment in favor of Cathy must be reversed because the videotaping captured nothing that would be viewed as highly offensive to a reasonable person. He emphasizes the videotape captured nothing of a "private" or "sexual" nature in the bedroom. This contention is without

_____

*without mechanical aids*, to oversee or overhear the plaintiff's private affairs . . .."; (c) a defendant is subject to liability "only when he has intruded into a private place, or has otherwise invaded a *private seclusion* that the plaintiff has thrown about his person or affairs . . . . Even in a public place, however, there may be some matters . . . that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters."; and (d) there may be no liability "unless the interference with the plaintiff's seclusion is a *substantial one,* of a kind that would be *highly offensive to the ordinary reasonable man,* as the result of conduct to which the *reasonable man would strongly object.*" Restatement (Second) of Torts § 652B cmt. a–d (emphasis added).

merit, however, because the content of the videotape is not determinative of the question of whether Jeffrey tortiously invaded Cathy's privacy. *See generally Stessman*, 416 N.W.2d at 687 (concluding plaintiff stated a claim for intrusion upon her seclusion where defendant videotaped her eating in a restaurant). The intentional, intrusive, and wrongful nature of Jeffrey's conduct is not excused by the fact that the surreptitious taping recorded no scurrilous or compromising behavior. The wrongfulness of the conduct springs not from the specific nature of the recorded activities, but instead from the fact that Cathy's activities were recorded without her knowledge and consent at a time and place and under circumstances in which she had a reasonable expectation of privacy.

Jeffrey also contends Cathy's claim must fail because Cathy effected the only publication of the videotape by permitting her sister to view it. An intrusion upon seclusion "does *not* depend upon any publicity given to the person whose interest is invaded or to his affairs . . . ." *See* Restatement (Second) of Torts § 652B cmt. a (emphasis added). Accordingly, Cathy had no burden to prove the videotape was published to a third party without her consent. We conclude Cathy met her burden to prove Jeffrey's intrusive videotaping would be highly offensive to a reasonable person.

**C. The Statute of Limitations.** The statute of limitations for invasion-of-privacy tort claims is two years. Iowa Code § 614.1(2). Jeffrey contends Cathy knew of his videotaping activities in 2004. He supports this contention with a series of emails allegedly sent to him by Cathy in October 2004 disclosing an awareness of his surveillance activities. At trial, Cathy disputed the authenticity of the emails and testified she discovered the videotaping in 2006. Whether or not the

emails are authentic, Cathy pled her claim in her answer filed on August 23, 2006, a date well within the two-year limitation period. Accordingly, Cathy's claim for invasion of privacy was not barred by the statute of limitations.

## IV. Conclusion.

Cathy had a reasonable expectation of privacy when she was alone in her bedroom. Jeffrey's covert video surveillance intentionally intruded upon Cathy's expectation of privacy. The intrusion was highly offensive to a reasonable person. We therefore affirm the decision of the court of appeals.

**AFFIRMED.**

All justices concur except Baker, J., who takes no part.