'35009, 35010. CONTINENTAL CASUALTY COMPANY *v.*
OWEN; and *vice versa.*

D ECIDED A PRIL 23, 1954—R EHEARING DENIED M AY 11, 1954.

202

206

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Ernest P. Rogers, Geo. B. Haley, Jr.*, for plaintiff in error.

*Burt De Rieux, Marshall, Greene, Baird & Neely*, contra.

GARDNER, P. J. ■ As to the general grounds, the assignments of error thereon, except the claim for a penalty and attorneys'

fees, are without merit, and the court did not err in directing a verdict for the principal amount of $9,300 and interest. We will discuss the question of a penalty and attorneys' fees in the next division of this opinion.

 We will now discuss whether or not the plaintiff, under the facts of this case, should be permitted to recover the penalty and attorneys' fees, according to the jury's verdict. The act of 1951 (Ga. L. 1951, p. 565, et seq.), generally known as the Motor Vehicle Safety Responsibility Act, provides in section 23 as follows: "Any person, firm, corporation or association who rents motor vehicles from a U-Drive-It owner is hereby required to provide their own insurance or bond and the insurance companies referred to in Section 17 of this Act shall be required by the Insurance Commissioner to provide 'spot' insurance which shall be purchased by said third person, firm, corporation or association before said U-Driv-It owner shall be authorized to turn a motor vehicle over to said person, firm, corporation or association. Provided, however, that in the event said U-Drive-It owner turns over any motor vehicle to said person, firm, corporation or association without first ascertaining that such 'spot' insurance has been obtained, then said U-Drive-It owner shall not be exempted from the provisions of this Act as provided in Section 15 of this Act, as to that particular rental transaction."

On the day the collision in question occurred, the plaintiff, Dr. Owen, procured a Chevrolet car from U-Drive-It for the purpose of traveling from Hapeville, Georgia, to North Carolina. On the trip and while in Georgia, he had a head-on collision with another automobile. Before the plaintiff could obtain the car from U-Drive-It, he was *required* by U-Drive-It to take out a "spot" insurance policy with the defendant. It appears from this record that the defendant wrote all the insurance for U-Drive-It and charged to the class of renters, such as the plaintiff, a fee of five mills per mile. Seven cents per mile was charged for driving the car, and five dollars per day was charged for the use of the car. The five mills per mile charge was remitted by U-Drive-It to the defendant at required intervals, as appears from the above statement of facts. There is evidence to the effect that the plaintiff informed U-Drive-It that he had car-insurance coverage. Nevertheless, U-Drive-It would not

rent a car to the plaintiff until the policy of insurance furnished by the defendant was obtained. The record does not disclose just when the plaintiff notified U-Drive-It or the defendant of the collision. So far as the record reveals, the Travelers first began the investigation which took place with the injured parties. It was agreed thereafter that the injured parties should receive the principal amount mentioned above. On November 23, 1951, the plaintiff by letter notified the defendant of the amount which would be required to settle the claims and also stated that the plaintiff would give the defendant ten days in which to settle the claims with the injured parties; otherwise, the plaintiff would be obliged to settle the claims with the injured parties himself and would look to the defendant to reimburse him. Thereafter, on May 1, 1952, the attorneys of record for the plaintiff wrote the defendant to the effect that they were notifying the defendant that the plaintiff had settled with the injured parties for the injuries received because of the collision in May, 1951, and that the rental agreement to the renter which the plaintiff had with U-Drive-It covered the amount which the plaintiff had paid to the injured parties. The letter of the attorneys for the plaintiff further stated that, unless the principal amount of $9,300 was paid within sixty days from May 1, 1952, legal proceedings would be instituted for the said principal sum, besides interest at the legal rate of 7%, and 25% as penalty on the entire amount, plus reasonable attorneys' fees. Thereafter suit was instituted by the plaintiff against the defendant and U-Drive-It to recover the sums alleged in the notice, and a verdict was rendered for the principal amount, interest, penalty, and attorneys' fees.

Attached to the pleadings will be found a copy of the policy of Travelers Insurance Company and a copy of the policy of the U-Drive-It rental agreement. The policy of Travelers Insurance Company is what is generally known as a standard automobile insurance policy and insures the plaintiff against personal-injury damages and property-damage loss, as above stated. A copy of the policy between U-Drive-It and the defendant is attached. That policy also has a property-damage provision and a personal-injury loss provision. The Travelers Insurance Company's policy covered damage to property and personal damages, $5,000 and

$100,000 respectively when the insured was driving any automobile. The defendant's policy, in the amount of $5,000 property damage and $10,000 personal-injury damages covered only a particular car which was rented to anyone by U-Drive-It,—in this instance the particular car which the plaintiff was driving at the time of the collision. It is conceded that the car which the plaintiff was driving on the occasion in question was a car rented under section 23 of the acts of 1951, p. 565 et seq. This last-mentioned policy had in it what is referred to as an exclusion clause, as follows: " 'Exclusions: This policy does not cover: '(d) Any liability for such loss as is covered on a primary, contributory, excess, or any other basis by a policy of another insurance company.' "

The plaintiff contends that the policy of the defendant is liable for the loss in the instant case, and the defendant contends that, under its exclusion clause, the plaintiff or the Travelers would be liable. The defendant introduced evidence to the effect that U-Drive-It would be unable to do business if it had to comply with the above provisions of section 23, in that, if a proposed renter of U-Drive-It exhibited a policy of insurance, U-Drive-It did not have facilities for investigating to determine whether or not the policy was in force nor its provisions, etc. Of course, U-Drive-It was not obliged to do business in Georgia if it could not abide with the provisions of the law, and it is elementary that, where the law provides a specific type of insurance, if the person or corporation operating under the law executes an insurance policy, it must meet the provisions of law in relation thereto. Where, as here, the U-Drive-It undertook to provide the "spot" insurance according to the acts of 1951, the law itself set forth the provisions of the insurance policy, which is in the nature of a bond to guarantee the public against damages by some irresponsible renter of a car of the U-Drive-It. We have been unable to find any definition of "spot" insurance, but we take it to mean a specific policy on a particular car by U-Drive-It rented to a specific renter. This is a first-impression case under the act of 1951, supra. There is a case not altogether similar but analogous to the instant one which we think covers the situation here. That case is *Hartford Steam Boiler Inspection & Ins. Co.* v. *Cochran Oil*

*Mill & Ginnery Co.*, 26 *Ga. App.* 288 (105 S. E. 856). The headnote of that opinion reads: "Where two policies of insurance are partly coextensive as to the character and subject matter of the risk assumed, but afford protection in common as to injuries to one particular class of persons when brought about by one particular cause, and where both contain certain inconsistent clauses whereby each insurer attempts to limit its liability for a loss of that kind to excess insurance only and provides that in such a case the other insurer is to be primarily, and it only secondarily, liable, and where effect can be given to only one or the other of these limitations without defeating the protection of the insured under both policies, the rule to be adopted is to require that the company whose policy affords specific insurance so far as such particular risk is concerned shall answer primarily for the loss."

We might also state in this connection that, since the defendant received a premium of five mills per mile from the plaintiff, there should be, and we think there is, under the law some sort of liability on the part of the defendant. Otherwise, the policy of insurance would be a mere piece of paper for which the plaintiff paid dearly. See the special concurrence in *Liberty Mutual Ins. Co.* v. *Atlantic Coast Line R. Co.*, 66 *Ga. App.* 826 (19 S. E. 2d 377). There are many cases cited by distinguished counsel for both parties, but we see no necessity for referring to them here. We think what we have said covers the situation.

We come to consider whether or not the verdict for attorneys' fees and the penalty under Code § 56-706 should be allowed to stand. Attorneys' fees and the penalty provided for in that section should never be permitted unless the defendant acts in bad faith—that is, that the defense is frivolous and unfounded. The attorneys for both parties here all specialize in insurance contracts. The question in this case has caused this court to use much consideration, and the voluminous briefs and the record in the case indicate that evidently the attorneys, as well as the trial judge, had no easy job in determining the law applicable, under all the facts and circumstances involved. We call attention to the following cases as authority for this court to set aside this portion of the judgment: *Life & Casualty Ins. Co. of Tenn.* v. *Freemon*, 80 *Ga. App.* 433 (c) (56 S. E. 2d 303);

*Northwestern Mutual Life Ins. Co.* v. *Ross*, 63 *Ga.* 199; *Mass. Benefit Life Assn.* v. *Robinson*, 104 *Ga.* 256, 291 (30 S. E. 918, 42 L. R. A. 261) ; *Equitable Life Assur. Society* v. *Gillam*, 195 *Ga.* 797, 805 (25 S. E. 2d 686, 147 A. L. R. 1008).

So, within ten days from the time the remittur is received in the trial court, let the amount of the penalty and attorneys' fees be written from the judgment; otherwise the judgment will stand reversed.

■ Special grounds 7 and 9 of the amended motion for new trial—the only special grounds not expressly abandoned—are without merit.

*Judgment affirmed in part and reversed in part, with directions on the main bill of exceptions. Cross-bill of exceptions dismissed. Townsend and Carlisle, JJ., concur.*