36896. RESERVE LIFE INSURANCE COMPANY *v.* GAY.

602

Decided October 16, 1957—Rehearing denied October 31, 1957.

*Eugene M. Kerr*, for plaintiff in error.
*Randall Evans, Jr.*, contra.

TOWNSEND, J. ■ ■ Code § 81-105 provides in part: "Copies of contracts, obligations to pay, or other writings should be incorporated in or attached to the petition in all cases in which they constitute the cause of action, or the relief prayed for must be based thereon. In suits to recover money on an insurance policy it shall be necessary to attach a copy of only what appears upon the face or in the body of the policy." However, failure to attach what appears in the body of the policy is a subject for special, not general demurrer. *Riley* v. *Royal Arcanum*, 140 *Ga.* 178 (1) (78 S. E. 803). And a special demurrer, being a critic, must itself be perfect. *Monday* v. *Life & Casualty Ins. Co. of Tenn.*, 82 *Ga. App.* 650 (62 S. E. 2d 197). The defendant's special demurrer was directed only to paragraph 8 of the petition on the ground that the required part of the insurance policy had not been pleaded. When the plaintiff by amendment struck these allegations from paragraph 8, and introduced other allegations regarding the issuance of the policy in paragraph 9, and there was no demurrer to paragraph 9 as amended nor any renewal of the special demurrers previously filed, the demurrer as it existed before amendment, even if not abandoned by failure to renew, was not sufficient to attack the defect in the petition in its amended form. There was accordingly no error in overruling the demurrer and refusing to dismiss the petition because of failure to comply with Code § 81-105.

■ As to the plaintiff failing to comply with a proper notice requiring the production of papers, Code § 38-803 provides as follows: "If the plaintiff or his attorney, being so notified, shall fail or refuse to comply with such order, the court shall, on motion, give judgment against such plaintiff as in case of nonsuit." The defendant insurance company served upon the plaintiff W. T. Gay, through his attorney of record, a notice to produce the insurance policy on which the plaintiff was proceeding. The policy was not produced, the plaintiff stating that he had given it to his attorney, and the attorney stating that he did not "now" have it in his possession. Regardless of whether the whereabouts of the policy was satisfactorily accounted for, the defendant shows no reversible error in this connection because it failed to procure a pre-emptory order from the court for the production of the policy and failed to make any motion for

nonsuit, both of which are essential before this statutory remedy can be invoked. See *National Bondholders 'Corp. v. Austell Bank*, 190 *Ga.* 411 (9 S. E. 2d 637). The remedy for failure to comply with a notice to produce lies by pursuing Code § 38-803, not by a motion for new trial. Special ground 14 is without merit.

■ On the trial of a case the burden rests on the plaintiff throughout to establish the material allegations of his cause of action. The plaintiff here alleged in substance that the defendant had issued to him and his family a policy of insurance No. J-390535 insuring them against expenses incurred because of hospitalization, doctors' fees and ambulance bills; that hospital expenses were incurred because of his wife's admittance to a named hospital from May 22, through May 31, 1956; that she incurred hospital expense of $200, doctor bills of $260, ambulance bills of $8.50, and that a named physician attended her each day during said period until her discharge. The plaintiff then attempted to prove that he was entitled to reimbursement under the terms of the policy of insurance by means of admissions of the defendant, and without ever introducing the policy in evidence. The defendant admitted, either in its pleadings, answers to requests for admissions, or answers to interrogatories, that it issued to the plaintiff and his family on December 28, 1953, a policy as to certain expenses incurred because of hospitalization, doctors' fees and ambulance bills; that the plaintiff's claim for hospital, medical and ambulance expenses arises by virtue of her being hospitalized between May 22 and 31, 1956, for an operation known as hysterectomy, benefits for which are provided on page 2 of the policy in part 3 thereof, and that the plaintiff's wife did become indebted for treatment to a medical doctor for some amount during that period. The defendant further admitted the provisions of part 3 of the policy as follows: "If as a result of such . . sickness . . the insured, or any member of the family group, shall have a surgical operation performed by a licensed physician or surgeon who is a doctor of medicine or osteopathy, the company will pay the insured (or will pay the physician or surgeon authorized by the insured to do so) for the fee charged by such physician or surgeon for such operation not to exceed the amount set opposite the name of the operation in the schedule of operations

below . . the following schedule shows the maximum amount payable as indemnity for the expense of the operation performed and is not intended to fix or govern the fee to be charged by the physician or surgeon . . Pelvis, Hysterectomy . . $100." There follows a schedule of hospital benefits, including room at $4 per day, and other specific benefits, and a benefit for ambulance expense not to exceed $5 per trip. The plaintiff testified that he paid an ambulance fee of $8.50, a medical bill of $200, and hospital expenses of "two hundred and some odd dollars." The plaintiff failed to prove any itemization of hospital expenses, or that any expenses on which coverage existed, other than the hospital room occupied by his wife for 9 days, were in fact incurred. The plaintiff was entitled under the policy provisions admitted and the proof offered to $36 for a hospital room at $4 per day, $100 of his medical bill for the operation, and $5 of the ambulance bill, or a total principal sum of $141. There was testimony in the record that a reasonable attorney's fee for prosecuting the action was $400, and the penalty for refusal to pay, if allowable, would be 25% of $141 or $35.25, making a total possible recovery of $576.25. Accordingly, special grounds 7, 12 and 16, insofar as they raise the question that a verdict of $800 is not sustainable under the evidence, are meritorious.

■ Special grounds 4, 5, and 6 complain of the charge of the court as follows: "If you find that the plaintiff has carried the burden of proving that the defendant is liable to him in any sum by a preponderance of the testimony, it would be your duty to fix that sum that you find from the evidence, and if you find that the sum is due and that the defendant failed to make payment within 60 days, then you would be authorized to penalize them for 25% of the amount that you find is due, and if you so find that it was done in bad faith, you may add attorney's fees to the amount that you believe from the evidence, has been proven by a preponderance of the evidence." These special grounds are meritorious insofar as they contend that the court erred in instructing the jury that they might add the 25% penalty for failure to pay within 60 days regardless of whether the refusal was in bad faith or not. Code § 56-706 provides that in all cases when a loss shall occur and the insurer shall refuse

to pay the same within 60 days after demand the company shall be liable to pay, in addition to the loss, not more than 25% on the liability for the loss and reasonable attorney's fees *"provided, it shall be made to appear to the jury trying the case that the refusal of the company to pay said loss was in bad faith."* (Italics ours.) Unless the jury finds the action to have been in bad faith, the penalty is not assessed. *Continental Casualty Co.* v. *Owen,* 90 *Ga. App.* 200, 210 (82 S. E. 2d 742). The charge as given withdrew from the jury's consideration bad faith in connection with the assessment of the penalty while making it a condition for the allowance of attorney's fees, and it was to this extent error. That the trial court left out, in connection with the charge on attorney's fees, the word "reasonable" is not reversible error here, the only evidence as to attorney's fees being that $400 would be a reasonable fee, or that the reasonable value of the services of the plaintiff's attorney in this case is nothing at all, the maximum amount recoverable under the evidence is $400.

■ Special ground 8 recites: "Because the court erred in allowing Mrs. Lorene V. Gay to testify over the objections of the defendant as to her physical condition at the time of the incurring of medical expenses, for which suit was brought, and in allowing said witness to testify as to the nature of her operation, as shown on pages 9 and 10 of the brief of evidence; said evidence being illegally admitted for the following reasons" which are then stated. It is contended by counsel for the defendant in error that this ground is not in proper form for consideration.

Prior to the amendment of Code § 6-901 (Ga. L. 1957, pp. 224, 232, infra) the rule was that, where in order to properly understand an assignment of error it was necessary to examine the evidence in the case, and such evidence was not set out in substance in the special ground so as to make it complete and understandable within itself, the ground was incomplete and would not be considered. *Hicks* v. *Cherry,* 193 *Ga.* 4 (3) (17 S. E. 2d 60). Undoubtedly this rule is superseded by the 1957 amendment, which provides: "Motions for new trial and for judgment notwithstanding the verdict, and assignments of error in the bill of exceptions need not set out therein portions of

record or transcript of evidence, nor shall it be necessary that the grounds thereof be complete in themselves, but shall point out such parts of the record or brief of the evidence by page number as are necessary to an understanding of the error complained of. Where, in preparing the record for transmission to the appellate court, the paging of the record is changed as required by Code, Ann. Supp., Sec. 6-1001, parties in their briefs shall point out the page numbers of the record where pages of the brief of evidence or other portions of the record pointed out in the assignment of error may be found." The new rule obviates the necessity of setting out portions of the brief of evidence, pleadings, and like matters, consideration of which may be necessary to determine whether an alleged error is in fact such, and whether, if error, it was harmful. As we construe the amendment, however, nothing therein is intended to obviate the necessity for making a definite and understandable *assignment* of error in the first instance. The special ground here does identify the witness to whose testimony objection was taken. It does not, however, state what that testimony was. We are referred to pages 9 and 10 of the brief of evidence, but these page numbers do not correspond either with the page numbers of the record (as now required by the 1957 amendment) nor do the ninth and tenth pages of the brief of evidence themselves contain any testimony by Mrs. Lorene Gay. It is true that Mrs. Gay testified, and that the court by examination of the brief of evidence has located her testimony and that a part of it was on the subject matter indicated in special ground 8. Does the movant intend to object to all testimony of Mrs. Gay on the subject matter indicated, that is, her physical condition and operation? If so the objection is too general because at least a part of Mrs. Gay's testimony would certainly be unobjectionable. If the objection is to certain of her testimony on this subject, it is impossible to tell on what part of it the error is intended to be assigned. The court does note certain objections and colloquies of counsel in the brief of evidence at this point, but these will not be considered for under Code (Ann.) § 70-305 it is required that the brief of evidence or stenographic report of the trial of the case not include motions to rule out evidence, objections to evidence, argument on motions and objections and like matter. *Hester*

*Bennett Lumber Co.* v. *Alexander,* 211 *Ga.* 402 (86 S. E. 2d 222). The presence of such matter in the brief of evidence is of itself sufficient cause for disregarding all assignments of error as to which reference to the brief of evidence is required. We do not believe that the 1957 amendment, supra, was intended to change the rule stated in *West* v. *Philpot,* 141 *Ga.* 681 (2) (81 S. E. 1036) and similar cases as follows: "Grounds of a motion for a new trial complaining of the admission and rejection of evidence which . . do not set out either in full or in substance the evidence with reference to the admissibility of which the rulings were made, and which are so indefinite in character that this court can not ascertain with certainty what such evidence or proposed evidence was, or whether the points made in regard to it have any merit in them, furnish no reason for a reversal of the judgment." To hold otherwise would be to hold that the new law not only allows reference to the brief of evidence to *understand* the assignment of error, but that it allows such reference to determine the identity of the assignment of error, which is a different matter. Special ground 8 is accordingly not in proper form for consideration because it cannot be determined from the ground, either alone or in connection with the brief of evidence in so far as the latter is in proper form, what evidence the movant contends should have been excluded by the trial court. Special grounds 9, 10 and 11 are subject to the same criticism. The provisions of Code § 6-801 that "the plaintiff in error shall plainly and specifically set forth the errors alleged to have been committed" is still the law, and so, we believe, is the ruling in *White* v. *Moss & Childs,* 92 *Ga.* 244 (1) (18 S. E. 13), to the effect that the appellate court can not undertake to pass on an objection to the admission of evidence which does not state what the evidence was, and only refers to it as being found on certain pages of the record, on the ground that such "extremely loose and careless" assignment of error is not within the provisions of Code § 6-801.

■ Special ground 13 complains that the trial court erred in charging as follows: "If you direct the person who is having some transactions with you to use certain means by which to make remittances to you, and if the premiums were turned over and the remittance made through the means which was adopted by

the insurance company, they would be bound by the remittance, if you believe, by a preponderance of the testimony that the premiums were deposited with the agency as designated by the insurance company, whether they obtained it or not, because that would be a matter between the insurance company and the agency which they adopted." In special ground 15 error is assigned on the admission in evidence of a United States "Receipt of Rural Carrier" signed by E. F. Purvis, Carrier, and identified by him in oral testimony, showing receipt of $5.10 with which to purchase a postal money order according to the remitter's application. The main defense urged by the defendant insurance carrier was that the hospitalization policy, which was taken out on December 28, 1953, and subsequently renewed, bore a $5 monthly premium, that the policy lapsed on February 28, 1956 for nonpayment of premium, that the March and April payments were never made, but a premium was received and the policy and coverage was reinstated as of April 28, 1956, and that during the time the policy lapsed the plaintiff's wife contracted the illness for which she was hospitalized. The plaintiff offered proof that the policy had never lapsed by testimony of his wife that she had each month left the sum of $5.10 in her rural route mailbox with a stamped, addressed envelope and instructions to the post office to fill out and mail to Reserve Life Insurance Company at its address a $5 money order, the 10 cents being the postal money order fee, plus the testimony of two route carriers that they had in fact picked up the envelope with the money and followed instructions by turning it in to the proper person at the post office whose duty it was to fill out and mail such postal money orders, and that person testified that the orders were actually mailed to the named recipient. The receipt, being properly identified by the witness who signed it, was correctly admitted in evidence. The defendant admitted that the policy contained a provision as follows: "If any premium be not received by the company, or paid to an authorized agent of the company, or deposited in the United States mail addressed to the company, on or before the date when due or within the grace period provided for herein . . this policy and all benefits hereunder shall terminate." The policy by this provision placed deposit in the United States mail in the same category

with actual receipt by the company, and proof by the plaintiff satisfactory to the jury that she did deposit the premiums in the mail would, under the terms of the policy, be the equivalent of payment. See *Frederics, Inc.* v. *Felton Beauty Supply Co.,* 58 *Ga. App.* 320 (1) (198 S. E. 324); *Rowntree Bros.* v. *Bush,* 28 *Ga. App.* 376 (1) (111 S. E. 217). Accordingly, the charge was without error and the evidence was sufficient to authorize a finding that the policy had not at any time lapsed for non-payment of premiums.

The only errors in this record are those stated in divisions 2 and 3 of the opinion, and deal with the amount of principal recovery and the error in regard to the charge on the penalty provisions of the policy. Accordingly, the judgment denying the motion for new trial is affirmed on condition that the plaintiff write off from the recovery all amounts in excess of $141 principal, $400 attorney's fees, and interest, within 5 days after the remittitur is returned to the trial court, otherwise, the judgment is reversed.

*Judgment affirmed on condition. Gardner, P. J., and Carlisle, J., concur.*