A92A1702, A92A1703. MACON TELEGRAPH PUBLISHING
COMPANY v. TATUM; and vice versa.
(430 SE2d 18)

COOPER, Judge.

Macon Telegraph Publishing Company ("appellant"), publisher of a daily newspaper in Macon, appeals from a jury verdict against it on two counts of invasion of privacy.

Nancy Tomlinson Tatum ("appellee") shot and killed a male intruder in her bedroom around 4:00 a.m. on a Saturday morning. At the time the intruder was shot, he was walking toward her bed, with a knife in his hand, his pants unzipped and his penis exposed. The police cleared the case as a justifiable homicide. Appellant's reporters received the name and address of appellee from the police, and although publication of the name of a victim of a sexual assault is illegal under the Georgia Rape Shield Statute (OCGA § 16-6-23), appellant published two articles about the incident, mentioning appellee's name as well as the street on which she lived. Neither article stated that a rape or assault with intent to commit rape had occurred, but the headline of the first article announced "Macon Woman Kills Attacker in Bedroom" and the text included the statement that the in-

truder had his pants unzipped. The second article also described an attempted rape which occurred nearby years earlier.

Several factual issues were hotly contested at trial, including whether appellee's name and address were already publicly available before appellant's articles were published, whether appellee was in fact the victim of a sexual assault and whether the newspaper knew appellee was the victim of a sexual assault. Appellant's reporters testified that the police gave them all the facts regarding the incident — including appellee's name and address — unconditionally and without reservation, and that there was nothing in those facts or in the reporters' conversations with the police to suggest that the incident was a sexual assault. Appellant also argued that the official police report classified the incident as a "burglary/justifiable homicide" without mentioning sexual assault, but did not place this report in evidence. On the other hand, the police testified that they made it clear to appellant's reporters that they were treating the incident as a sexual assault. They further testified that they were reluctant to give out appellee's name and finally did so only with the understanding that appellee's name would not be published without her permission and that publication of her name otherwise would violate the Rape Shield Statute. With respect to the police report, one of the officers explained that the assault report in this case was not filled out as completely and diligently as it might have been in other cases since the assailant was dead and there was no one to prosecute. Appellant also presented testimony and argument suggesting that there was a police report containing appellee's name and address which was publicly available prior to appellant's publication. This was denied by several of appellee's witnesses.

In its charge to the jury, the trial court specifically instructed the jurors that they could find appellant had invaded appellee's privacy *only* (1) if the facts appellant published had not been made public before, (2) if appellee was the victim of a sexual assault, (3) if appellant knew or reasonably should have known appellee was the victim of a sexual assault and (4) if appellant nonetheless published appellee's name in wilful or conscious disregard of the foregoing facts. The jury found against appellant on two counts of invasion of privacy (one for each article) and awarded appellee $15,000 in general damages and $35,000 in punitive damages on each, for a total of $100,000. In Case No. A92A1702, appellant challenges the judgment and award against it on numerous grounds. In Case No. A92A1703, appellee enumerates as error several evidentiary rulings which will need to be addressed only if we hold in Case No. A92A1702 that a new trial is warranted.

1. Appellant first argues that its motion for directed verdict should have been granted because imposition of civil liability based

on a newspaper's publication of a rape victim's name in violation of a criminal Rape Shield Statute is impermissible under *The Florida Star v. B. J. F.*, 491 U. S. 524 (109 SC 2603, 105 LE2d 443) (1989). In *Florida Star*, the name of a rape victim was inadvertently released by police when they placed a written report of the incident with other news releases in a room to which the press and public had unrestricted access. A reporter-trainee for the defendant newspaper copied the report verbatim in the paper's "Police Reports" section, including the victim's name. The victim brought an action for civil damages against the paper, and the trial court granted a directed verdict for the victim on the issue of negligence, finding the paper negligent per se based on its violation of the Florida Rape Shield Statute. The United States Supreme Court reversed the judgment for the victim, holding that imposition of civil liability for violation of the Rape Shield Statute under the circumstances of that case was improper: "[W]here a newspaper publishes truthful information which it has lawfully obtained, punishment may be lawfully imposed, if at all, only when narrowly tailored to a state interest of the highest order." 491 U. S. at 541. Although recognizing that protecting the privacy and safety of rape victims and encouraging rape victims to report the crimes against them without fear of exposure are "highly significant" state interests which might support imposition of liability under some circumstances, see id. at 537, the Court in *Florida Star* concluded that imposition of civil liability was not a narrowly tailored way to advance those interests in that case because of the presence of three overriding factors. First, the published information was released to the newspaper by agents of the State in the form of a news release, without restriction. If the media cannot rely on their right to publish contents of a news release put out by the State without restriction, self-censorship will result in a chilling of news dissemination. Id. at 538-539. Second, the negligence per se standard swept too broadly, for, "[u]nlike claims based on the common-law tort of invasion of privacy," liability followed automatically from publication without case-by-case findings of, among other things, scienter. Id. at 539-540. Third, the Court concluded that, because the Rape Shield Statute applied only to the media, liability for negligence per se based on violation of that statute was underinclusive and thus not narrowly tailored to the purposes it purportedly served. Id. at 540-541. The Court emphasized the narrowness of its holding in *Florida Star*, explicitly leaving open the possibility that imposing liability for publishing the name of a rape victim might be warranted under other circumstances. Id. at 537, 541; see also *Dorman v. Aiken Communications*, 398 SE2d 687, 689, nn. 2, 4 (S. C. 1990).

Because none of the three factors emphasized by the Supreme Court in *Florida Star* is applicable to the facts of the instant case, we

do not agree with appellant's contention that *Florida Star* bars its liability. First, the police in this case did not issue a news release containing appellee's name, and the reporters' testimony that the police gave them appellee's name without restriction and/or in a written police report was rejected by the jury. The fact that the information was not obtained from a news release issued by the State without reservation, together with the fact that the jury in this case had to find wilful and conscious disregard of appellee's rights in order to find liability, serves to diminish if not totally eliminate the Court's concerns in *Florida Star* about overdeterrence and self-censorship. Second, liability in this case was based on the common-law tort of invasion of privacy, not on negligence per se for violating the Georgia Rape Shield Statute. Indeed, in discussing the constitutional problems presented by the negligence per se standard applied by the trial court in that case, the *Florida Star* Court specifically contrasted the negligence per se standard with an invasion-of-privacy analysis which would provide for the case-by-case factual findings constitutionally required. And third, the same distinction — that the instant case is based on generally applicable invasion-of-privacy law rather than on violation of a statute — also eliminates concerns regarding underinclusiveness. Because the Rape Shield Statute provides only a statement of public policy and not the basis for liability (see Division 2, infra), any individual or entity could be liable for invasion of privacy if they wilfully violated appellee's rights in this manner, even if they were not guilty of violating the statute. The trial court instructed the jury that it could find appellant liable only if it found, among other things, that the published information was not a matter of public record prior to publication and that appellant published the information in wilful and conscious disregard of appellee's rights. Under these circumstances, we conclude that imposition of liability for invasion of privacy for publishing the name of a rape victim is not precluded by *Florida Star*.

2. Appellant next contends that its motion for directed verdict should have been granted because the evidence was insufficient to establish invasion of privacy as a matter of law. More specifically, it argues that publication of information regarding a crime victim can never support an action for invasion of privacy because such information is a matter of legitimate public interest, citing *Waters v. Fleetwood*, 212 Ga. 161 (91 SE2d 344) (1956). The legally protected right to privacy is limited by rights of speech and of the press, and the two sets of rights must be balanced so that neither is allowed to destroy the other. See *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 204-205 (50 SE 68) (1905). As a general matter, a crime is a matter of legitimate public interest, and a publication in connection therewith cannot violate the privacy rights of a crime victim because the vic-

tim's privacy interest is outweighed by First Amendment interests in free expression regarding matters of legitimate public interest. See *Waters*, supra at 167. By passing the Georgia Rape Shield Statute, however, the Georgia Legislature has stated as a matter of public policy that, where the crime involved is rape, sexual assault or attempted sexual assault, the legitimate public interest in the identity of the victim does *not* outweigh the victim's privacy interest. Although the Rape Shield Statute is a criminal statute, the statement of public policy it embodies applies equally in the context of civil liability, effectively negating the rationale underlying *Waters* and rendering it inapplicable in situations like that presented here.[1] Accordingly, *Waters* also does not preclude appellee's invasion-of-privacy action.

In the same enumeration of error, appellant further argues that it cannot be liable for invasion of privacy because the published information was already publicly available. See *Cox Broadcasting Corp. v. Cohn*, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975). However, evidence was presented which supports a finding that the published information was not already publicly available, and pursuant to the trial court's instructions, the jury had to find that the information was not already publicly available in order to render the verdict it did.

3. In its third enumeration of error, appellant argues that the Georgia Rape Shield Statute is unconstitutionally overbroad. This specific constitutional issue was not directly ruled upon by the trial court and thus is not properly presented for appellate review. See *Grice v. State*, 199 Ga. App. 829 (1) (406 SE2d 262) (1991). If it were, this case would have to be transferred, as exclusive jurisdiction over cases in which the constitutionality of a statute is drawn into question is in the Supreme Court. *Pruitt v. State*, 203 Ga. App. 125, 127 (3) (416 SE2d 524) (1992); Ga. Const. 1983, Art. VI, Sec. VI, Par. II (1).

4. Appellant asserts that the trial court impermissibly restricted its cross-examination of a police officer with regard to alleged contradictions between his testimony that he told the reporters the incident was a sexual assault and the failure of the police incident report to mention the sex-related nature of the incident. However, before any objection was made, appellant was able to ask numerous questions regarding these alleged contradictions, fully driving home its point. Accordingly, even if we assume that appellant's line of questioning was proper impeachment despite the fact that the witness did not au-

---

[1] Appellant continues to maintain that there was and is no "objective evidence" of sexual assault, despite the fact that appellee shot the intruder while he was advancing toward her in her bedroom with a knife in one hand and his exposed penis in the other. However, the jury found as fact that appellee was the victim of an assault with intent to commit rape, and this finding is supported by evidence in the record.

thor the report, see *Estes v. State*, 165 Ga. App. 453 (2) (301 SE2d 504) (1983), the trial court's termination of that line of questioning after appellant was able to make its point to the jury is not reversible error. See *Sanders v. State*, 181 Ga. App. 117, 121-122 (3) (351 SE2d 666) (1986).

5. In its fifth enumeration of error, appellant argues that the trial court erred in instructing the jury on damages pursuant to both OCGA § 51-12-5 (punitive damages) and § 51-12-6 (damages where entire injury is to plaintiff's peace, happiness or feelings), thereby allowing a double recovery. See *Westview Cemetery v. Blanchard*, 234 Ga. 540, 546 (216 SE2d 776) (1975). It does not appear that the trial court charged on OCGA § 51-12-6 as asserted. In any case, we need not address the merits of this enumeration since the record reveals that, although appellant objected to the jury charge on punitive damages on the grounds that there was no evidence to justify a punitive damage award, it did not object to the charge on the grounds that punitive damages would constitute a double recovery. Accordingly, appellant did not properly preserve this issue by "stating distinctly the matter to which he objects and the grounds of his objection," OCGA § 5-5-24 (a), and the error alleged is not the type of "substantial error in the charge which was harmful as a matter of law" warranting review under OCGA § 5-5-24 (c) despite appellant's failure to preserve the issue. See *Sanders v. Hughes*, 183 Ga. App. 601, 603 (2) (359 SE2d 396) (1987).

6. Appellant also contends that the trial court erred in disallowing the testimony of its expert on journalistic standards. This enumeration is without merit because minimum standards of journalism were irrelevant to any material issue in the case, and a trial court does not err in excluding irrelevant testimony. OCGA § 24-2-1.

7. Next, appellant asserts that the trial court's instruction on invasion of privacy was erroneous and contrary to *Waters*, supra. This argument is essentially identical to that discussed in Division 2. For the reasons set forth there, the instructions given in this case, requiring that the jury find that the published facts were not a matter of public record prior to publication and that appellant published in wilful disregard of appellee's rights in order to find that appellant invaded appellee's privacy, properly incorporated the First Amendment concerns expressed in *Florida Star* and *Cox* into general invasion-of-privacy law.

8. In its final enumeration of error, appellant challenges the trial court's refusal to give its requested charge that it could not be liable for harm resulting from the conduct of third parties, relying on *Tucker v. News Pub. Co.*, 197 Ga. App. 85 (2) (397 SE2d 499) (1990). However, the requested charge comes from the portion of *Tucker* discussing actions for intentional infliction of emotional distress. Be-

cause no issue of intentional infliction of emotional distress was submitted to the jury for determination, the requested charge was inapplicable to the facts of the instant case, and the trial court did not err in refusing to give it.

9. Because we affirm the trial court's judgment and no new trial is necessary, the evidentiary issues raised by appellee in Case No. A92A1703 need not be addressed.

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 15, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993 

*Anderson, Walker & Reichert, Walter H. Bush, Jr., Susan S. Cole*, for appellant.

*Adams & Hemingway, William P. Adams, Albert Pearson III*, for appellee.

*Hull, Towill, Norman & Barrett, David E. Hudson, Edward J. Tarver*, amici curiae.