S98G0978. A. ATLANTA AUTOSAVE, INC. v. GENERALI — U. S. BRANCH.

(514 SE2d 651)

HINES, Justice.

We granted certiorari to the Court of Appeals to consider its decision in *A. Atlanta AutoSave v. Generali — U. S. Branch*, 230 Ga. App. 887 (498 SE2d 278) (1998), an appeal in an action for declaratory judgment about the priority of insurance coverage for a rental vehicle involved in a collision. We affirm because the Court of Appeals correctly concluded that the car rental agency, AutoSave, could not avail itself of the exemption provided a U-drive-it owner under OCGA § 40-9-102,[1] rendering its insurance for the rental car primary for coverage of the collision.

The facts are set forth in the Court of Appeals opinion. On January 12, 1995, A. Atlanta AutoSave rented a car to Cabey. Cabey's companion, Roberts, was named in the rental agreement in the space provided for additional drivers, but she did not sign the contract. Cabey and Roberts both presented insurance information to the rental agent and manager, Haraka. Cabey produced an insurance card showing she had automobile liability coverage with Southern General Insurance Company through February 24, 1995. Roberts provided an insurance card showing she had automobile liability insurance with Generali — U. S. Branch through April 14, 1995.

---

[1] OCGA § 40-9-102 provides:

Any person who rents motor vehicles from a U-drive-it owner is required to provide his own insurance, and insurance companies authorized to issue automobile policies in this state shall be required by the Commissioner of Insurance to provide "spot" insurance, which shall be purchased by such person before the U-drive-it owner shall be authorized to turn a motor vehicle over to such person. If a U-drive-it owner turns over any motor vehicle to any person without first ascertaining that such "spot" insurance has been obtained, the U-drive-it owner shall not, as to that particular rental transaction, be exempted from the provisions of this chapter as provided in Code Section 40-9-4.

Cabey's insurance information was entered on the contract under "Renter's Applicable Insurance." Roberts' insurance information was handwritten in the middle of the rental agreement under the heading "Local." Haraka averred that he called INSURGEORGIA, the agent for both Cabey and Roberts, and verified that both policies were in effect and applied to the rental. However, Cabey's policy had been canceled with Cabey's consent about three weeks before.

While driving the car, Roberts was involved in a collision with a vehicle driven by Williams. Williams and her passenger, Jones, alleged they received injuries and filed claims for damages with Generali and AutoSave. Generali and AutoSave each contended that the other had primary coverage for any bodily injury claims arising from the collision.

Generali filed a declaratory judgment action naming AutoSave, Roberts, Jones, and Williams as defendants. Williams moved for summary judgment on the issue of priority of coverage between Generali and AutoSave, contending that Generali's coverage was primary because Roberts was driving. Generali also filed a motion for summary judgment, arguing that it provided only excess coverage and that primary coverage from the subject collision was with AutoSave. The trial court granted Generali's motion and denied Williams' motion, effectively declaring AutoSave's coverage primary.[2]

The Court of Appeals affirmed the grant of summary judgment to Generali, concluding that despite AutoSave's attempted verification of coverage, AutoSave's insurance must become primary under OCGA § 40-9-102. It found undisputedly that Cabey did not have insurance at the time of the rental, and that Roberts was not a party to the rental agreement.

1. The clear language of OCGA § 40-9-102 addresses itself to the *renter* of the vehicle, not the *operator*, authorized or not, inasmuch as the relationship with the rental agency is a matter of contract. Thus, even though Roberts could be liable in a tort action if she was at fault in the collision, the priority of liability coverage between the renter's insurance carrier and the insurer of the rental vehicle is the issue here.

AutoSave asserts Roberts' alleged intent to be a co-renter, and thus a party to the contract, citing the affidavit of Haraka, AutoSave's manager/rental agent. But such assertion based on intent found outside the contract is unavailing. The rental agreement is

---

[2] AutoSave also argued to the trial court that the rental vehicle in question was actually owned by Prime Sales and Leasing, Inc., was leased to AutoSave, and that the vehicle was insured under Prime's self-insurance plan rather than its own. However, AutoSave did not seek a specific ruling in this regard, and both the trial court and the Court of Appeals effectively treated AutoSave as the self-insurer of the vehicle.

unambiguous on its face that Cabey is the sole renting party; there is nothing in the agreement demonstrating that Roberts assented to its terms or intended to be bound by the contract. See OCGA § 13-3-1. If Roberts was intended to be a co-renter, nothing prevented AutoSave from indicating it in the rental agreement; there is no allegation of fraud, mistake, or accident. That the agreement listed Roberts' address and insurance information specifically as the listed additional driver did not, as a matter of law or fact, transform her into a contracting party. Accordingly, the contract is not susceptible to variance by parol evidence. OCGA § 13-2-2 (1); *American Cyanamid Co. v. Ring*, 248 Ga. 673, 674 (286 SE2d 1) (1982).

The Court of Appeals correctly determined that driver Roberts was not a renter or co-renter under the agreement, and therefore not subject to the provisions of OCGA § 40-9-102. Compare *Jones v. Wortham*, 201 Ga. App. 668 (411 SE2d 716) (1991), in which the driver was also the lessee of the rental vehicle.

2. OCGA § 40-9-102 imposes upon the car rental agency the duty to verify that the renter has insurance for the rental, and if not, mandates the purchase of "spot" liability insurance prior to furnishing the vehicle. *Alamo Rent-A-Car v. Hamilton*, 216 Ga. App. 659, 660 (455 SE2d 366) (1995). The rental is to be insured, through either the renter's own vehicle insurance policy if it would cover the rental situation or by the purchase of insurance coverage for the rental vehicle from the rental agency. *Atlanta Rent-A-Car v. Jackson*, 204 Ga. App. 448 (419 SE2d 489) (1992). The Court of Appeals determined the existence of genuine issues of material fact as to AutoSave's compliance with OCGA § 40-9-102. *A. Atlanta AutoSave v. Generali – U . S. Branch*, supra at 888 (1). But accepting for the sake of argument that AutoSave did all that it could or all that was reasonable to verify coverage before turning over the rental vehicle, the question is whether the car rental agency loses the statutory exemption provided by OCGA § 40-9-102 when it is later determined that the renter did not have insurance coverage. The answer to such question must be yes. This is so because of the clear legislative purpose behind OCGA § 40-9-102 and because of the public policy of this state.

OCGA § 40-9-102 is plainly remedial. *Rabinovitz v. Accent Rent-A-Car*, 213 Ga. App. 786 (446 SE2d 244) (1994). Its focus is not the effectiveness of the rental agency in ascertaining the renter's coverage, nor is its ultimate aim to sanction the rental agency for a less-than-diligent or unsuccessful effort in that regard. The obvious purpose of the statute is to protect the public against injury by an irresponsible renter of a U-drive-it vehicle. It does not do this by attempting to prevent tortious acts by the renter; it does not address such a problem, but rather assures that there is insurance coverage for the rental. That is the object of OCGA § 40-9-102. *Alamo Rent-A-*

*Car v. Hamilton,* supra at 661. Thus, the statutory requirement for the rental agency rightfully has been considered to be in the nature of a bond. Id.; *Rabinovitz v. Accent Rent-A-Car,* supra; *Continental Cas. Co. v. Owen,* 90 Ga. App. 200, 209 (2) (82 SE2d 742) (1954). This is entirely consistent with the mandate of OCGA § 33-34-4, which directs that no owner of a motor vehicle required to be registered in Georgia will operate or authorize any other person to operate the motor vehicle unless the owner has motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the Motor Vehicle Safety Responsibility Act, OCGA § 40-9-1 et seq.

The advent of compulsory liability insurance in Georgia does not render anachronistic the concept of the rental agency as a guarantor of insurance coverage in the event of mishap involving the rental vehicle. Quite the contrary. For regardless of our state's requirements to carry insurance, the reality is that some will be unwilling or financially or otherwise be incapable of securing the necessary liability insurance or the protection of uninsured/underinsured motorist coverage. As importantly, "[o]ur compulsory insurance law established the public policy that 'innocent persons who are injured should have an adequate recourse for the recovery of their damages,' . . . ." *Cotton States Mut. Ins. Co. v. Neese,* 254 Ga. 335, 341 (1) (329 SE2d 136) (1985). See also *Cotton States Mut. Ins. Co. v. Starnes,* 260 Ga. 235, 237 (392 SE2d 3) (1990); *Integon Indem. Corp. v. Canal Ins. Co.,* 256 Ga. 692 (353 SE2d 186) (1987). Complete insurance coverage for all persons is more than a laudable goal; this Court has considered complete liability coverage for the protection of the public to be a policy that is "overriding." *Stepho v. Allstate Ins. Co.,* 259 Ga. 475, 476 (1) (383 SE2d 887) (1989); *GEICO v. Dickey,* 255 Ga. 661, 663 (340 SE2d 595) (1986). Consequently, this Court must focus not on a perceived statutory entitlement for car rental agencies under OCGA § 40-9-102 but rather on fulfillment of the statute's goal. Otherwise, the innocent victim of a traffic mishap with a rental vehicle might well be left injured but without remedy even though the car rental agency carries full liability coverage on the offending vehicle.

Holding the U-drive-it owner, effectively the car rental agency, ultimately responsible for primary coverage when the renter is uninsured, even if the lack of insurance is discovered post-collision, results in no unfairness to the agency. It is part of the cost of doing business. What is more, by providing the possibility of exemption, OCGA § 40-9-102 accords the rental agencies special treatment in the first place. *Jones v. Wortham,* supra at 670.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Carley and Thompson, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

Faced with a case of first impression concerning the scope of the conditional exemption contained in OCGA § 40-9-102, the majority concludes that a car rental agency which fulfills its duties under the statute so as to be entitled to the statutory exemption provided therein loses that exemption and must take on the role of insurance guarantor because the purpose behind OCGA § 40-9-102 and the public policy of Georgia require it. I respectfully disagree with the majority's analysis and the conclusion it reaches. Accordingly, I dissent.

1. OCGA § 40-9-102 provides a mechanism by which the owner of a U-drive-it rental vehicle is exempted from the provisions of the Motor Vehicle Safety Responsibility Act (MVSRA). The statute requires the person who rents a motor vehicle to provide insurance for the rental vehicle, either through the renter's personal vehicle insurance policy which covers the renter while driving a car other than the one the renter owns, or by purchasing insurance covering the rental vehicle from the rental agency in connection with the rental. *Atlanta Rent-A-Car v. Jackson*, 204 Ga. App. 448 (419 SE2d 489) (1992). To earn a statutory exemption from the provisions of the MVSRA, the rental agency has a duty, before giving the renter control of the vehicle, either to verify that the renter has his own liability insurance coverage which covers rental vehicles or to require the renter to purchase liability coverage for the vehicle in connection with the rental. OCGA § 40-9-102; *Alamo Rent-A-Car v. Hamilton*, 216 Ga. App. 659, 660 (455 SE2d 366) (1995). Notations on the rental contract reflecting that the renter is insured (e.g., the name of the renter's insurance company, the policy number and expiration date) demonstrate that the rental agency has fulfilled its duty to ascertain that the renter had insurance coverage. *Atlanta Rent-A-Car v. Jackson*, supra, 204 Ga. App. at 451.

In the case at bar, notations on the rental contract to the effect that both the renter of the vehicle and the additional driver presented evidence of insurance coverage to the rental agency reflect that the rental agency fulfilled its duty and was entitled to the statutory exemption from the MVSRA. Furthermore, the rental agency's employee testified by affidavit that he contacted the insurance agent for the renter and additional driver and verified that the insurance policies were in effect. The post-collision discovery of the fact that the renter did not have liability insurance coverage does not require the rental agency to give back the mantle of protection it earned by complying with the statute. The rental agency may lose its exemption only by turning over a rental car without having ascertained that the renter has liability insurance coverage for the rental vehicle either through the renter's personal policy or through a policy issued in con-

junction with the rental. OCGA § 40-9-102. See also *Atlanta Rent-A-Car v. Jackson*, supra, 204 Ga. App. at 451. Since the rental agency verified the existence of coverage before turning the rental vehicle over to the renter, the rental agency's exemption is in place and its policy of liability insurance is not available to compensate the other driver and her passenger for the damages caused by the additional driver of the rental car.

2. The majority takes the position that the lack of insurance covering the renter causes OCGA § 40-9-102 to operate so as to put the rental agency in the position of a guarantor of insurance coverage. Relying on language in *Continental Cas. Co. v. Owen*, 90 Ga. App. 200 (2) (82 SE2d 742) (1954), and *Alamo Rent-A-Car v. Hamilton*, 216 Ga. App. 659 (455 SE2d 366) (1995), the majority concludes that OCGA § 40-9-102 is "in the nature of a bond" which makes the rental agency a guarantor to protect the public against irresponsible renters of motor vehicles. The language relied upon from *Continental Casualty* must be examined in the context of that opinion, which was issued before the advent of compulsory liability insurance in Georgia. In *Continental Casualty*, the Court of Appeals decided that a trial court had erred by requiring the insurance company which had issued a specific policy of insurance on a specific rental car to pay the insured renter attorney fees and a penalty for bad faith refusal to pay, and the appellate court described the insurance policy issued by the rental agency to the renter as "in the nature of a bond to guarantee the public against damages by some irresponsible renter of a car of the U-drive-it." Id. at 209. It is certainly true that a policy of liability insurance issued for a specific car rented to a specific renter for a specific period of time guarantees compensation, at least to the limits of the policy, to the public for damages caused by the irresponsible renter's use of the rented vehicle. The *Continental Casualty* court described the policy of insurance, not the statute, as a guarantee of a limited amount of fiscal compensation to the victims of a tortfeasing renter. Two appellate cases decided after the introduction of compulsory liability insurance to Georgia took *Continental Casualty*'s narrow use of "in the nature of a bond" and suggested that the statute itself, rather than the insurance policy, guaranteed insurance coverage to the public. See *Alamo Rent-A-Car v. Hamilton*, supra, 216 Ga. App. at 661; *Rabinovitz v. Accent Rent-A-Car*, 213 Ga. App. 786 (446 SE2d 244) (1994). This seemingly innocuous blurring of focus did not become problematical until the Court of Appeals' decision in this case (230 Ga. App. 887), where the statutorily-exempted rental agency was judicially labeled a guarantor of insurance coverage. *Continental Casualty*'s statement that an insurance policy guaranteed coverage became a statement that a statute guaranteed coverage and has now metamorphosed into a ruling that a rental agency is a guarantor of

coverage.

The public policy in Georgia that "innocent persons who are injured should have an adequate recourse for the recovery of their damages" (*Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (1) (329 SE2d 136) (1985)), cannot be used to support the withdrawal of the rental agency's statutory exemption. The exemption at issue is embodied in a statute, the enactment of which constitutes a statement of public policy. See *Caldwell v. Hosp. Authority*, 248 Ga. 887 (2) (287 SE2d 15) (1982); *Macon Tel. Pub. Co. v. Tatum*, 208 Ga. App. 111 (2) (430 SE2d 18) (1993). Furthermore, while complete insurance coverage for all persons is a laudable goal of any statutory insurance scheme, the goal of insurance coverage for all the innocent injured is not the primary objective in all cases. Compensation for the innocent injured has been given a backseat when the tortfeasor/driver is not a permissive user of the vehicle under the terms of the applicable insurance policy. See, e.g., *Omni Ins. Co. v. Harps*, 196 Ga. App. 340 (396 SE2d 66) (1990); *Select Ins. Co. v. Register*, 192 Ga. App. 145 (384 SE2d 238) (1989). The innocent injured are also left without recourse if they are struck by a vehicle insured by a policy with a business use exclusion if the driver is engaged in business at the time injury is inflicted. Jenkins & Miller, *Georgia Automobile Insurance Law* (1998 ed.), § 12-12. Our compulsory insurance law itself recognizes that there are many instances in which an innocent injured might be left uncompensated by a motorist who is uninsured or underinsured, despite the existence and applicability of the compulsory insurance law. OCGA § 33-7-11 (b) (1) (D) (i-v) & (b) (2). As a result, our compulsory insurance law mandates that every motor vehicle liability policy issued or delivered in Georgia contain an endorsement or provision "undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." OCGA § 33-7-11 (a) (1). Like the compulsory insurance statute, OCGA § 40-9-102 is a legislative effort to have insurance coverage available. However, like the compulsory insurance law, OCGA § 40-9-102 is not a guarantee that insurance coverage is available in all instances. Accordingly, the avowed goal of insurance coverage for all injured is not sufficient justification to negate the public policy embodied in the statutory exemption of OCGA § 40-9-102.

To hold, as does the majority, that the rental agency is a guarantor of insurance coverage, will result in a modification of the U-drive-it rental business in Georgia, at increased cost to the renter. From here on out, the rental agency will have to *ensure* that a renter has liability coverage rather than ascertain that coverage has been obtained, in order to be entitled to the statutory exemption. No longer will a rental agency be entitled to its exemption by verifying

the evidence of the existence of insurance coverage the rental agency receives from the renter. Therefore, the holding in *Atlanta Rent-A-Car v. Jackson,* supra, 204 Ga. App. at 450-451 (evidence demonstrating that rental agency had ascertained renter had insurance negated the need to offer insurance coverage to the renter) will no longer be valid. Instead, a rental agency can only ensure the existence of liability coverage by selling a policy of insurance to the renter in conjunction with the rental. Accordingly, a rental agency desirous of gaining the § 40-9-102 exemption will have to require the renter to purchase insurance coverage, even if the renter has existing coverage. Not only does the majority's interpretation of § 40-9-102 negate the portion of the statute authorizing the statutory exemption upon determining the existence of pre-existing coverage, it also invalidates the holding in *Atlanta Rent-A-Car v. Jackson,* that the statute does not require the rental agency to offer insurance at the time of rental if the renter already has insurance to cover the rental vehicle. Furthermore, to assure its exemption, the rental agency will have to require every additional driver of the rented vehicle to sign the rental contract as a renter, and insist that each additional driver buy a policy of insurance from the rental agency to cover the rental vehicle.[3] As a result, the cost of renting a vehicle in Georgia will rise, with consumers being forced to pay for insurance coverage they already possess, quite an anomalous situation considering the statute permits a renter to provide insurance coverage through his personal insurance policy.

3. Since, in the case at bar, the renter had no insurance coverage and the rental agency is statutorily exempt from providing coverage for this particular rental vehicle, the innocent injured must look for compensation to the insurance coverage of the insured additional driver. By providing coverage when its insured drove a vehicle other than the one she owned, the insurer of the additional driver evaluated and insured against the very risks present in this case. See *Jones v. Wortham,* 201 Ga. App. 668, 670 (411 SE2d 716) (1991). Accordingly, I believe that it is the insurer of the alleged tortfeasor, the additional driver, which must provide liability coverage for the injured motorist and her passenger.[4] As a result, I must respectfully

---

[3] The Court of Appeals stated its belief that OCGA § 40-9-102 "requires each individual operator to carry insurance" in *Jones v. Wortham,* 201 Ga. App. 668, 670 (411 SE2d 716) (1991). It is clear that the statute requires only that the renter provide insurance for the rental vehicle. *Jones v. Wortham* involved a tortfeasor/driver who was also the renter of the rental vehicle. The language in *Jones* should not be read as a holding that OCGA § 40-9-102 requires every operator of a rental vehicle to have insurance before the vehicle is rented, but must be limited to the factual setting in which it arose — where the operator of the rented vehicle is the renter.

[4] The fact that the driver's insurance policy provided "excess" coverage when the insured was operating a vehicle she did not own is of no moment when the vehicle she was driving was owned by a U-drive-it agency which had earned the statutory exemption from

dissent from the majority, which does not see the existence of the alleged tortfeasor's insurance coverage as a relevant factor in this case.

I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

DECIDED MARCH 19, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*McCrimmon & McCrimmon, Edward W. McCrimmon, Lisa L. McCrimmon,* for appellant.

*Lane, O'Brien & Caswell, Stephen J. Caswell, Michael A. Penn, Steven W. Gardner, Pat D. Dixon, Jr.,* for appellee.

providing insurance coverage for the rental vehicle. *Jones v. Wortham*, supra, 201 Ga. App. at 670-671.